## SOUTHERN CONSTRUCTION CO., INC., ET AL. *v.* PICKARD, DOING BUSINESS AS PICKARD ENGINEERING CO.

No. 46.   Argued October 16, 1962.—Decided November 5, 1962.

*William J. Harbison* argued the cause for petitioners. On the briefs were *Charles C. Trabue, Jr.* and *Harry S. McCowen.*

*Edward Gallagher* argued the cause and filed briefs for respondent.

PER CURIAM.

Southern Construction Company, one of the petitioners here, was the prime contractor on contracts with the United States for the rehabilitation of certain barracks at Fort Campbell, Tennessee, and Fort Benning, Georgia. There were three contracts covering the Georgia project and one covering the Tennessee project.   Pursuant to the provisions of the Miller Act, 49 Stat. 793, as amended, 40 U. S. C. §§ 270a–270d, Southern furnished performance and payment bonds, with Continental Casualty Company, co-petitioner here, as surety.   The plumbing and heating

subcontractor on both projects was the respondent Samuel J. Pickard, doing business as Pickard Engineering Company. Pickard's primary supplier on both projects was the Atlas Supply Company.

In December 1955, Pickard's men left the Tennessee job before it was fully completed, and shortly thereafter left the Georgia project. Atlas, Pickard's supplier, claimed that $34,520 was due it for materials furnished on the Tennessee job and $104,000 for materials furnished on the Georgia project. Following a conference in August 1956 between Southern officials and representatives of Atlas, Southern paid Atlas $35,000 in exchange for a complete release of all liability of Southern on Pickard's accounts with respect to both the Georgia and Tennessee projects.[1]

In December 1956, acting under the provisions of the Miller Act, Pickard brought suit, in the name of the United States, in the United States District Court for the Middle District of Georgia against Southern and Continental for recovery of amounts allegedly owing on both the Georgia and Tennessee jobs. In January 1957, Southern filed an answer and a counterclaim in which it alleged that Southern had paid out more than the contract price on both jobs and in which recovery of the excess was sought. The $35,000 payment to Atlas was at that time included in the counterclaim.

The Miller Act, however, requires that suits instituted under its provisions "shall be brought . . . in the United States District Court for any district in which the contract was to be performed and executed and not elsewhere . . . ." 40 U. S. C. § 270b (b). Since this statute appeared to prohibit an action in the Georgia District Court on the Tennessee project, Pickard in April 1957

---

[1] Under the Miller Act, 40 U. S. C. § 270b, Southern as a prime contractor was secondarily liable to suppliers of the subcontractor.

filed the present action against petitioners in the United States District Court for the Middle District of Tennessee relating to the Tennessee project only, and by amendment eliminated this part of his claim from the Georgia action.

The Georgia action proceeded to trial in 1959, and according to the findings of the District Court in the present case the $35,000 payment to Atlas was "dropped" prior to trial from the counterclaim originally asserted in that action. The Georgia suit has not yet proceeded to final judgment, the Georgia District Court in September 1961 having granted Southern's motion for a new trial on its counterclaim.

In the Tennessee action here involved Southern included the $35,000 payment as part of its counterclaim for affirmative relief, and Pickard answered that the counterclaim was barred by *"res judicata."* Southern later waived any claim to affirmative relief in this action and sought only a credit of $34,520 against Pickard's contract claim on the Tennessee project. This figure was the precise amount that had been claimed by Atlas to be due it for materials supplied on this job.

The District Court, in deciding that Pickard was not entitled to any recovery, allowed this $34,520 item as a credit against Pickard's claim, but on this point the Court of Appeals for the Sixth Circuit reversed. 293 F. 2d 493. It held that since there had been no allocation of the $35,000 payment as between the Georgia and Tennessee projects the item, under Rule 13 (a) of the Federal Rules of Civil Procedure, was a "potential compulsory counterclaim" in either of the two suits; [2] that when the respon-

---

[2] Rule 13 (a) provides:

"*(a) Compulsory Counterclaims.* A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's

sive pleading in the Georgia suit was filed the counterclaim was not the subject of any other pending action and was therefore "compulsory" in *that* suit; and, accordingly, that such counterclaim could not later be asserted in the present action. We granted certiorari to consider the applicability of Rule 13 (a) in these unusual circumstances. 368 U. S. 975.

We accept for present purposes the ruling below that the $35,000 payment had not been allocated as between the Tennessee and Georgia projects and that it therefore could have been asserted in either action. Nevertheless, we do not believe that Rule 13 (a) operates to prohibit its use in the later Tennessee action. The requirement that counterclaims arising out of the same transaction or occurrence as the opposing party's claim "shall" be stated in the pleadings was designed to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters. The Rule was particularly directed against one who failed to assert a counterclaim in one action and then instituted a second action in which that counterclaim became the basis of the complaint. See, *e. g., United States* v. *Eastport S. S. Corp.*, 255 F. 2d 795, 801–802.

It is readily apparent that this policy has no application here. In this instance, the plaintiff-respondent, who originally sought to combine all his claims in a single suit, correctly concluded that he was required by statute to split those claims and to bring two separate actions in two different districts. The fragmentation of these claims, therefore, was compelled by federal law, and the primary defendant in both actions was thus for the first time confronted with the choice of which of the two pending suits

claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction, except that such a claim need not be so stated if at the time the action was commenced the claim was the subject of another pending action."

should be resorted to for the assertion of a counterclaim common to both. Under these circumstances, we hold that Rule 13 (a) did not compel this counterclaim to be made in whichever of the two suits the first responsive pleading was filed.[3] Its assertion in the later suit, to which Southern, not without reason, considered it more appurtenant (pp. 58–59, *supra*), by no means involved the circuity of action that Rule 13 (a) was aimed at preventing. Accordingly, the judgment of the Court of Appeals insofar as it related to this counterclaim is reversed, and the case is remanded to that court for further proceedings consistent with this opinion.

*It is so ordered.*

---

[3] We are informed that after certiorari was granted in the present case, Southern filed an amended counterclaim in the Georgia action which included the $35,000 item involved here. Further proceedings in the Georgia action, however, are awaiting our decision in this case. Of course once this counterclaim has been adjudicated in one of the actions it cannot be reasserted in the other.