Howard G. DINDO

v.

Harold O. WHITNEY.

Civ. A. No. 2935.

United States District Court,
D. New Hampshire.
April 12, 1971.

---

William Maynard, Maynard, Dunn & Phillips, Concord, N. H., for plaintiff.

John E. Gormley, Walter D. Hinkley, Lancaster, N. H., Roger B. Phillips, Concord, N. H., for defendant.

## OPINION

BOWNES, District Judge.

This is an action by Howard Dindo, a resident of Barre, Vermont, against Harold Whitney, a resident of Lancaster, New Hampshire, for injuries arising out of an automobile accident in Chartierville, Quebec, on October 30, 1965. The plaintiff was driving a motor vehicle owned by the defendant and al-

leges that the defendant, while attempting to reach a flashlight, negligently interfered with the plaintiff's operation of the vehicle by placing his left arm and wrist through the steering wheel thereby causing the vehicle to leave the road resulting in plaintiff's injuries.

The defendant has moved to dismiss the complaint on the grounds that it is barred by Rule 13(a) of the Federal Rules of Civil Procedure because Dindo failed to interpose this claim as a counterclaim in a prior action arising out of the same accident by Whitney against Dindo.

## FINDINGS OF FACT

There have been two evidentiary hearings relating to this accident which provide the basis for findings of fact. One was held on January 20, 1969 (hereinafter 1969 Hearing), and a second was held on March 12, 1971 (hereinafter 1971 Hearing) [1]. On October 30, 1965, Dindo and Whitney both suffered personal injuries in an automobile accident in Chartierville, Quebec, when the motor vehicle owned by Whitney and operated by Dindo went off the road and struck a culvert. Aside from Dindo and Whitney, there were no witnesses to the accident.

In January of 1966, Mr. Marihugh, an adjuster for Travelers Insurance Company (the insurer of Whitney as owner of the motor vehicle involved), visited Dindo at his home in the course of his investigation of the accident. Mr. Marihugh testified that Dindo was mentally alert and that he had a clear recollection of the circumstances surrounding the accident. Testimony of Mr. Marihugh, 1971 Hearing. A signed statement given by Dindo at this meeting contains the following:

I glanced down for a flash light, but the slippery roads [sic] was the cause of the accident. Deft's.Ex.E.

In June of 1966, Whitney and Dindo conferred with Attorney Richard Davis in Barre, Vermont. The plaintiff testified that he believed Attorney Davis was going to represent him. 1969 Hearing, p. 35. Mr. Aldrich, an investigator employed by Attorney Davis, testified at the 1971 Hearing that Dindo, who was a resident of Barre, arranged the meeting so that Whitney, a resident of New Hampshire, could meet Attorney Davis and decide whether to retain him as counsel in his action against Dindo.

On June 15, 1966, Whitney, Dindo, Aldrich, and a man named Lajeunesse went to the scene of the accident in Canada to take pictures. The plaintiff testified that during this trip the defendant, for the first time, stated that he reached through the steering wheel. The plaintiff testified that this was "the first I learned what caused the accident * * *." 1969 Hearing, p. 30. Mr. Aldrich testified at the 1971 Hearing that Whitney made no such statement and that, in fact, Dindo said he was to blame for the accident.

On June 29, 1966, Attorney Davis filed an action on behalf of Whitney against Dindo in the Federal District Court of Vermont alleging damages of $150,000. After service of the complaint, Dindo received a letter from the Travelers Insurance Company (insurers of Whitney's vehicle) informing him that the case had been referred to the firm of French and Miller in Rutland, Vermont. The letter also advised that the policy limit was $50,000 and recommended that Dindo consult counsel regarding the excess of $100,000. Deft's. Ex.I.

In July of 1966, Dindo gave a complete statement of the facts to Mr. Aldrich. Deft's.Ex.G. In that statement, on a page signed by Dindo, the following description of the accident appears:

I felt the wheel pull and I looked up and realized I was getting partly off

---

[1]. While a transcript for the 1969 Hearing is available at the time of this decision, the transcript of the 1971 Hearing is not.

my right hand side of the road. I had glanced down from the road to get a flashlight that was attached to the steering column of the Scout and Whitney was also reaching for it because I didn't locate it. I wanted the flashlight so Whitney could look at a road map. Deft's.Ex.G, p. 2.

In preparation for the defense of the Vermont case, Attorney Lawrence Miller, who handled the case, made three or four phone calls to Dindo. The first was in late September prior to the deposition of Whitney taken October 4, 1966. At the deposition, Attorney Miller asked questions regarding the flashlight incident, and Whitney testified in substance that the flashlight was positioned eight or ten inches below the steering wheel and could easily be reached by a passenger without interfering with the steering wheel. Pl.Ex. 1, p. 15.

Attorney Miller testified at the 1971 Hearing that in the course of further phone conversations in February and March of 1967, Dindo affirmed that the statement given Marihugh was accurate. Attorney Miller stated that Dindo told him that the accident happened because of an unexpected patch of ice and that no one was to blame for it because it was an unavoidable accident. Attorney Miller further testified that Dindo expressly stated that the flashlight had nothing to do with the accident.

In light of these facts, Attorney Miller decided that the case could not be defended on the issue of liability and settled Whitney's case against Dindo for $45,000 in March of 1967. The Vermont District Court entered an "Order for Entry of Settled and Discontinued" on March 22, 1967.

On October 25, 1968, the present case was filed in this court. Dindo alleges that Whitney caused the accident by reaching through the steering wheel and pulling it to the right while trying to reach the flashlight. This court, without opinion, granted a motion to dismiss based on the Quebec statute of limita-

tions. The Circuit Court of Appeals reversed, Dindo v. Whitney, 429 F.2d 25 (1st Cir. 1970). The Circuit Court, however, expressly stated that it did not pass on the question of whether this action, as a second one between the parties, violated Rule 13(a). Id. at 26.

### RULINGS OF LAW

■ Rule 13(a) of the Federal Rules of Civil Procedure provides:

*(a) Compulsory Counterclaims.* A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action, or (2) the opposing party brought suit upon his claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any counterclaim under this Rule 13.

The present action by Dindo is a classic example of a compulsory counterclaim that should have been pleaded in the prior action under Rule 13(a). Dindo did not plead a counterclaim; he merely pleaded the defenses of contributory negligence and assumption of the risk in the prior action. Dindo's claim for damages here arose out of the same accident which gave rise to Whitney's claim against Dindo. It is, therefore, a claim that arose out of the same occurrence which was the subject matter of Whitney's claim. The exceptions stated in Rule 13(a) do not apply here. The counterclaim would not have required the presence of third parties over whom the Vermont District Court could not ac-

quire jurisdiction; there was no pending action by Dindo against Whitney; the Vermont District Court had personal jurisdiction over Dindo, a resident of Vermont, and could have entered a personal judgment against him.

This action, therefore, falls directly within the purpose of Rule 13(a). In Southern Construction Co., Inc. v. Pickard, 371 U.S. 57, 83 S.Ct. 108, 9 L.Ed. 2d 31 (1962), the Supreme Court stated:

The requirement that counterclaims arising out of the same transaction or occurrence as the opposing party's claim "shall" be stated in the pleadings was designed to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters. The Rule was particularly directed against one who failed to assert a counterclaim in one action and then instituted a second action in which that counterclaim became the basis of the complaint. Id. at 60, 83 S.Ct. 108, at 110.

The plaintiff, however, argues that Rule 13(a) should not apply here because (1) the motion was filed after inexcusable delay; (2) the counterclaim was not in existence at the time of filing the answer in the prior action; (3) there was never an adjudication on the merits in the prior action; and (4) the insurance company is not the agent of the insured for the purpose of binding him to a settlement. I rule that none of these arguments foreclose the application of Rule 13(a) under the facts of this case.

■ I consider first the issue of inexcusable delay. The motion to dismiss relying on Rule 13(a) was filed on July 31, 1970, only eighteen days after the decision of the Court of Appeals reversing this court's earlier ruling that the action was barred by the statute of limitations. Since the defendant did not have any duty, or indeed any reason, to file additional motions once the dismissal had been granted by this court on

statute of limitations grounds, there is no inexcusable delay.

The second ground urged by the plaintiff is that Rule 13(a) should not apply because the existence of the counterclaim was not known at the time of the prior action. Mr. Dindo testified that Whitney admitted he caused the accident during the June, 1966, trip to Canada. 1969 Hearing, pp. 27, 28, 29, and 41. Dindo testified that after the admission in 1966, he discussed the matter with Attorneys Leinwohl and Abare and that they told him he had "no case." Both of these attorneys, via depositions, testified that they had no personal recollection or any records showing that they discussed the accident in Canada with Dindo. Deft's.Ex.C and D. In the statement given to Aldrich, Attorney Davis' investigator, about a month after the alleged admission by Whitney, Dindo made no mention of Whitney's conduct as a causative factor in the accident. Attorney Miller testified at the 1971 Hearing that Dindo made no mention of the admission or Whitney's conduct in the September, 1966, phone call or in the subsequent phone conversations between him and Dindo in 1967.

■ From all the evidence presented, I find that if the alleged admission was in fact made, the plaintiff had ample opportunity to communicate this to Attorney Miller before the answer was filed and certainly before the case was settled in March of 1967. The evidence establishes that Dindo, in June, July, or August of 1966, clearly understood the alleged admission and its ramifications. Dindo testified that he couldn't "visualize what happened until August, I think July or August of '66." 1969 Hearing, p. 27. In response to a question from his attorney asking when he first learned he had a cause of action for which he could go to court, Dindo stated:

Well, July or August of 1966, but I wasn't sure about it. I talked to three lawyers and they told me nothing

doing. I think they were afraid of Mr. Davis. 1969 Hearing p. 36.

In short, assuming what Dindo says is true as to Mr. Whitney's conduct, he knew the cause of the accident in June of 1966 and even went to lawyers regarding a claim against Whitney. Dindo should have transmitted these facts to Attorney Miller and had ample opportunity to do so. The fact that the other attorneys with whom he allegedly spoke said he had "no case" is no justification for not transmitting the facts and the admission to Attorney Miller.

▉ The plaintiff also argues that since the prior action was not litigated but was settled, the purpose of Rule 13(a) is not violated by the present action. I do not accept this interpretation of Rule 13(a). The Rule does not require that the case be tried on the merits; it simply requires that the counterclaim be asserted in the pleadings. Cf. Reynolds v. International Harvester Co., 141 F.Supp. 371 (N.D.Ohio 1955). In the present action, a settlement was reached between the attorneys on the basis of their evaluation of the facts. There was no fraud, deception, or misrepresentation on the part of the attorneys which would make the settlement void. The settlement was the resolution of the claim by Whitney against Dindo. To hold that Rule 13(a) does not apply when the prior action is settled would completely subvert the Rule's purpose of bringing about a just and speedy resolution of all the claims between the parties arising out of the same transaction or occurrence.

The plaintiff's final contention is that he cannot be bound by the actions of counsel retained by an insurance company who held the policy on the defendant's automobile. The issue of insurance counsel and Rule 13(a) has been confronted in other cases. In LaFollette v. Herron, 211 F.Supp. 919 (E.D.Tenn. 1962), the court ruled that Rule 13(a) would not be applied to bar the plaintiff's action. In LaFollette, the lawyer

for the insurance company settled the prior claim eight months after the accident while his client (the defendant in the prior action) was apparently in the hospital. The court refused to apply Rule 13(a) because the plaintiff did not consent to the settlement and his only contact with the case was one visit by a claims agent. The court also relied on the fact that the plaintiff was unaware that suit had been filed, was not informed about the case, did not speak to his attorney, and was not physically able to file a counterclaim. The court also emphasized the fact that the plaintiff told the claims agent he intended to bring an action against the other party involved.

▉ The present case is entirely different on its facts. Dindo was visited by two investigators on at least three different occasions and on one of these took a trip back to the scene of the accident with Whitney and Aldrich. Dindo knew that suit was pending and had three or four phone conversations with Attorney Miller. There was never any indication given by Dindo to Attorney Miller or the investigators that he intended to make a claim against Whitney. The only common factor in the two cases is that Dindo was not a signatory to the settlement. However, he was a longtime friend of Whitney's and must have known a settlement had been reached. The present action was filed a year and one-half after the settlement was reached. In LaFollette, the action was brought about four months after the prior settlement.

This case is more analogous to Kennedy v. Jones, 44 F.R.D. 52 (E.D.Va.1968). There it was stipulated that the plaintiff (defendant in the prior action) was not informed of his right to file a counterclaim or of the fact that his failure to raise it would bar its assertion in a subsequent action. Although the prior case involved in *Kennedy* was fully litigated, the court's discussion of the duty

of insurance counsel is fully applicable here.

> There is no suggestion that [plaintiff] ever told the Richmond law firm of his desire to assert any claim against the [defendant]. Presumably, if [plaintiff] had expressed any such desire, the law firm would have either prepared and filed a counterclaim, or would have otherwise explained to him that he had a right to retain the services of privately employed counsel. The filing of a counterclaim is frequently deemed to be a defensive tactical move and there is no reason to believe that defense counsel would not have resorted to same. While it is true that, in actions involving liability insurance attorneys, the latter ordinarily retain control of the litigation, this is not to say that such control may be exercised to the deprivation of rights with respect to filing a compulsory counterclaim. [Citations omitted.] Id. at 54.

Attorney Miller stated that if Dindo had brought this claim of negligence to his attention in the prior action, a counterclaim would have been filed. There is no reason to doubt that this would have been done.

Some courts have stated that Rule 13(a) is predicated on the theory of *res judicata*. See Schott v. Colonial Baking Co., 111 F.Supp. 13 (W.D.Ark.1953). When the prior action has not been tried on the merits, it is more appropriate to apply Rule 13(a) on a waiver or estoppel basis. Under these facts, the plaintiff has waived any claim he may have had or is estopped from asserting it by his failure to include a counterclaim in the prior pleading. This is not a case of fraud or misrepresentation by an attorney; neither is it a case involving a plaintiff whose cause of action has been concealed from him; nor is it a case where the claim could not, for some justifiable reason, be raised in the prior action. Assuming the present statement of facts now asserted by the plaintiff to be true, he testified he knew the cause of the accident in 1966 and I find that he was under no disability which would have prevented communication of these facts to Attorney Miller because he also testified that he brought these facts to the attention of other attorneys in 1966. Rule 13(a) is an effective bar to this attempt to resurrect a claim that should have been asserted in the prior action.

Defendant's motion to dismiss is granted.