Fred P. **TASNER** and Harry Fox, on behalf of themselves individually and as members of the USI Stockholders Committee and representatively and derivatively on behalf of themselves and all of the stockholders of U. S. Industries, Inc. similarly situated, Plaintiffs,

v.

I. John **BILLERA** and U. S. Industries, Inc., Defendants.

No. 74 C 239.

United States District Court,
N. D. Illinois, E. D.

July 5, 1974.

See also D.C., 379 F.Supp. 815.

Abner J. Mikva, D'Ancona, Pflaum, Wyatt & Riskind, Chicago, Ill., for plaintiffs.

Henry M. Thullen, Stanley B. Block, John J. Cassidy, Jr., Vedder, Price, Kaufman & Kammholz, and Jenner & Block, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

BAUER, District Judge.

This cause comes on the plaintiffs' motion for an injunction staying U. S. Industries, Inc. v. Fred P. Tasner, Robert M. Tasner and Alvin Tasner (74 C 1714) which is pending in the United States District Court for the Southern District of New York (hereinafter referred to as the "New York action").

The instant diversity action seeking injunctive relief and damages was instituted on January 23, 1974 in the Circuit Court of Cook County, Illinois. It was thereafter removed to this Court pursuant to 28 U.S.C. § 1441(a) within the time prescribed by law. This Court allegedly has jurisdiction over this diversity action pursuant to 28 U.S.C. § 1332. The matter in controversy allegedly exceeds the sum of $10,000 exclusive of interest and costs.

The plaintiffs, Fred P. Tasner and Harry Fox, are citizens of the State of Illinois. The defendant, I. John Billera is a citizen of the State of Connecticut. The defendant U. S. Industries, Inc. ("USI") is a corporation incorporated under the laws of the State of Delaware, with its principal place of business in the State of New York.

The named plaintiffs in their complaint allege two causes of action. The first cause of action is on behalf of the plaintiffs individually and the other is a derivative and representative claim on behalf of all USI stockholders "similarly situated".

In substance, the plaintiffs in the complaint alleged that they are substantial USI stockholders and were executive employees of USI. After the named plaintiffs and others formed the "USI Stockholders Committee" in October 1973 in an effort to change the composition of the USI Board of Directors and provide for a new president, the defendant Billera terminated plaintiffs' employment pursuant to a scheme by him to perpetuate his control of USI and thus interfere with the plaintiffs' exercise of their rights as stockholders and to deter others from doing likewise. Plaintiffs seek reinstatement, compensatory damages, punitive damages of $1,000,000 against Mr. Billera, another $1,000,000 punitive damages from Mr. Billera in favor of USI, injunctive relief against any similarly motivated terminations or threats of termination in the future.

The defendants have filed a verified answer denying the fundamental allegations of the complaint, and a counterclaim alleging that plaintiffs committed manifold violations of Section 14(a) of the Securities Exchange Act of 1934 and of the proxy solicitation rules.

The plaintiffs in support of their instant motion contend that:

1. The matters asserted in the New York action are so closely related to those asserted in the instant action that under Rule 13(a) of the Federal Rules of Civil Procedure those claims can be brought only in this action as compulsory counterclaims.

2. Aside from the applicability of Rule 13(a), the factual and legal issues which USI seeks to litigate in the New York federal court are duplicative of those already before this Court; and thus, this Court should exercise equity's traditional function of enjoining a multiplicity of suits.

3. Such proceedings against plaintiff Tasner, who brings this action *inter alia* derivatively on behalf of USI against an officer in control of the company, inevitably must deflect a significant portion of plaintiff's resources from this liti-

gation for reasons which are unrelated to the merits of the derivative claim. A district court has responsibility, under Rule 23.1 of the Federal Rules of Civil Procedure, to supervise, and insure vigorous prosecution of derivative claims.

The defendants, in opposition to the instant motion, contend that:

1. Since the issues and parties in the New York action differ from this action, the claims in the New York action are not compulsory counterclaims here, and, accordingly, the New York action should be allowed to proceed.

2. Since the issues and parties in the those in this action an injunction New York action differ from is not issuable under the All Writs Act.

3. Plaintiff Tasner's allegations of a derivative or class action do not confer upon him immunity from defending a purportedly bona fide action against him by the corporation, and give him no right to a change of venue.

4. Even if some of the claims in the New York action were compulsory counterclaims, the Court could not enjoin the others nor could it enjoin any claims against non-parties.

### The New York Action

It is important to the proper disposition of the instant motion to understand the thrust of the New York action. In contrast to the instant action based on events which occurred in late 1973 and in 1974, the New York action is brought by USI as a sole plaintiff against Fred P. Tasner; his brother, Alvin Tasner, and Alvin's son, Robert M. Tasner, who were the principal stockholders of Production Controls, Inc. ("PCI"), and is based principally on events occurring in 1969 and 1970 in connection with the sale of the business and assets of PCI to USI in July, 1969.

The principal charge in the New York complaint is that the defendants through an alleged series of fraudulent misrepresentations and omissions, induced USI to purchase the business and assets of PCI for an aggregate of $5,477,000 in USI preferred stock, although such business and assets were worth no more than $1,000,000. Accordingly, USI sustained damages in the amount of approximately $4,477,000. The first claim in the complaint, which is brought under Rule 10b–5, seeks $4,477,307.04 in compensatory damages, plus exemplary damages of $5,000,000.00. The third claim of the complaint seeks the same damages on the basis of common law fraud.[1]

These two claims, that the Tasners fraudulently induced USI to issue its stock to them for the purchase of PCI in 1969, account for a majority of the total damages sought. These claims made by Fred Tasner and Harry Fox in the instant action, and none of the legal or factual issues which these two claims raise is apparently involved in the instant action.

This is also true of the second and fourth claims in the New York complaint. The second claim under Rule 10b–5, and the fourth claim, for common law fraud, allege that approximately $1,000,000 of the USI preferred stock

1. Among the alleged fraudulent misstatements and omissions charged against defendants are: (1) concealment of the facts that five purchasing agents of Colgate (which accounted for well over half of PCI's business) had received stock in PCI, that PCI had long-term packaging contracts with Colgate, one of which had been cancelled and one of which was going to be cancelled, and that sales to Colgate were in jeopardy of being discontinued, as in fact they were after 1969, and (2) fraudulent recording of substantial amounts of PCI's books and records as payments for packaging services allegedly performed in 1969, when in fact they were either cancellation payments on long-term contracts, attributable to a prior year, or were for the repurchase of machinery used in connection with the cancelled contracts.

delivered by USI in payment for the PCI business and assets, based upon pre-tax profits of PCI for 1969, was paid by USI on the basis of alleged fraudulent misrepresentations by defendant concerning PCI's 1969 profits. These misrepresentations included the false recording of income, which occurred prior to the purchase in July of 1969, and some similar fraudulent recording of income in the period subsequent to the purchase, as well as the fraudulent inflation of 1969 profits through false and fraudulent insurance claims made in connection with a fire at one of PCI's plants in the fall of 1969. These claims seek recovery of approximately $1,000,000 in compensatory damages and $2,000,000 in exemplary damages.

The sixth through twelfth claims allege a series of actions by Fred Tasner and Robert Tasner in converting property of USI to their own personal use and in causing USI property to be diverted to others without consideration, and seek recovery of USI's damages, plus the compensation paid by USI to Fred Tasner and Robert Tasner, plus $700,000 in exemplary damages. All of these seven claims together seek a total of $1,543,000 out of the overall total of $12,520,000 sought by the complaint.

It is the opinion of this Court, after carefully examining the relevant pleadings and memoranda submitted by the parties in support of their respective positions, that this Court, in the interests of justice and judicial integrity, should not stay the New York action.

I. SINCE THE ISSUES IN THE INSTANT ACTION ARE SUBSTANTIALLY DIFFERENT FROM THE ISSUES IN THE NEW YORK ACTION, NONE OF THE CLAIMS OF THE NEW YORK ACTION CAN BE TERMED COMPULSORY COUNTERCLAIMS UNDER RULE 13(a) OF THE FEDERAL RULES OF CIVIL PROCEDURE, AND THE NEW YORK ACTION SHOULD NOT BE STAYED.

The plaintiffs contend that the New York action should be stayed because the matters asserted in the New York action are so closely related to those asserted in the instant action that under Rule 13(a) of the Federal Rules of Civil Procedure those claims can be brought only in the instant action as compulsory counterclaims.

 The purpose of Rule 13(a) is to discourage multiplicity of actions and to encourage settlement of all related claims in one action between the parties. Southern Construction Co. v. United States for the use of Pickard, 371 U.S. 57, 83 S.Ct. 108, 9 L.Ed.2d 31 (1962). The compulsory counterclaim must be logically related to the original claim and arise out of the same subject matter on which the original claim is based. Moore v. New York Cotton Exchange, 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750 (1926). Many of the same factual legal issues, or offshoots of the same basis controversy between the parties must be involved in such a compulsory counterclaim. Great Lakes Rubber Corporation v. Herbert Cooper Co., 286 F.2d 631 (3rd Cir. 1961). However, Rule 13(a) does not require that the parties litigate in the same action logically distinct and separate claims which do not arise out of the transaction or occurrence that is the subject matter of the primary action. Yates v. Gulf Oil Corp., 182 F.2d 286 (5th Cir. 1950); Safeway Trails, Inc. v. Allentown & Reading Transit Co., 185 F.2d 918 (4th Cir. 1950); American Airlines, Inc. v. Transport Workers Union, 44 F.R.D. 236 (N.D.Okla.1968).

 It is the opinion of this Court that the New York action and the instant action involve separate and distinct claims which occurred at different times and involved materially different facts and subject matter but also to a degree different parties.

The gravamen of the instant action is the claim that Billera conspired to prevent the exercise of lawful stockholder rights of Tasner and others, and in the course of this conspiracy fired Tasner "with the purpose and intent to interfere with, infringe upon and deter the exercise of the stockholder rights." [2]

Thus, the major issue in the instant action is Billera and his "group"'s motive in firing Tasner on January 18, 1974.

The claims against the plaintiff Tasner in the New York action are that he defrauded USI in 1969 when it bought the PCI business and that subsequently, as an employee of USI, he dealt with companies in which he had an undisclosed interest, converted money and property of USI to his personal use, and secretly engaged in business in competition with USI.

The defendants adequately contend that these facts were not even discovered until after the plaintiff Tasner's discharge.[3] Thus the operative facts involved in the New York action do not appear to be relevant in determining the motive for that discharge.

It appears that the only reasons advanced by defendants for the firing of plaintiff Tasner relate to his action in the latter part of 1973 in "trying to undermine USI's management" by making false and misleading attacks upon Billera personally and false and misleading statements with regard to USI, in the course of "trying to recruit members for his Committee," and do not relate in any way to the allegations contained in the New York action which occurred for the most part in 1969 and 1970.[4] The defendants have represented to this Court that "they do not, and will not, raise in the Chicago action as their motive for firing Tasner the claims against him alleged in the New York action."

Thus, the key issue in the instant action is whether Tasner was fired because of his attempt to exercise "corporate democracy" or because of his criticism and attempts to undermine USI's management. Regardless of which party prevails on the merits in the instant action, it is clear that the result will not have logical effect on the New York action because there are no causual relationships between the two actions.

If it is determined in the instant action that Tasner was fired for exercising corporate democracy, this will in no way resolve the issues in New York whether in any event he defrauded and stole from USI. If it is determined in the instant action that he was fired because of his attempts to undermine management in 1973, this will not resolve whether he defrauded USI in 1969 and stole from it since then. Likewise, whether or not it is established in New York that Tasner defrauded USI in 1969 and stole from it since will not resolve the major issue in the instant action of whether Tasner was fired in 1974 for exercising corporate democracy, as Tasner claims, or for undermining USI's management, as the defendant claims.

2. See paragraph 16 of the instant complaint.

3. The defendant reasons as follows: Tasner was fired on January 18, 1974. The complaint in New York was filed on March 28, 1974. Defendants did not have the evidence supporting the New York claims until "mid-March, 1974." See Silberman Supplemental Affidavit, paragraph 9.

4. See Kaynor Affidavit, paragraph 13. The defendants have represented that among these false and misleading statements, which were reported to USI's top management and were the critical factors in the ultimate decision to terminate Tasner, were that USI was in poor financial condition and that its dividend was in jeopardy; that management had been falsifying the financial statements so as to overstate earnings; that Billera "lined his pockets with gold at the expense of the USI stockholders"; that Billera had given himself a $250,000 cash bonus in 1973; and that good divisions of USI were being sold to generate profits to offset the losses of poor divisions. See, e. g., Asher Affidavit, paragraphs 2–3, 5; Bowen Affidavit, paragraphs 2–3; Kaynor Affidavit, paragraphs 13–15; Oldford Affidavit, paragraph 2; Thunander Affidavit, paragraphs 2–3, 5; Walker Affidavit, paragraphs 10–12.

It is clear that the claims alleged in the New York action are not related to the issues in the instant action, are not compulsory counterclaims and should not be enjoined. American Airlines, Inc. v. Transport Workers Union, *supra*; Non-Ferrous Metals, Inc. v. Saramar Aluminum Co., 25 F.R.D. 102 (N.D.Ohio, 1960); McKnight v. Halliburton Oil Well Cementing Co., 20 F.R.D. 563 (N. D.Va.1957). The instant action and the New York action involve separate and distinct claims which not only occurred at different times but also involve different facts and subject matter. Thus the instant motion to stay the New York action should be denied.

## II. EQUITY DOES NOT REQUIRE THAT THIS COURT STAY THE NEW YORK ACTION.

While a court may enjoin the prosecution of a second of two identical actions, it is well settled that equity or judicial economy does not require that a second action be enjoined where either the issues or the parties are not identical. See Martin v. Graybar Electric Co., 266 F.2d 202 (7th Cir. 1959); Tubular Textile Machinery Corp. v. Dedman, 173 F.Supp. 269 (S.D.N.Y.1959), aff'd. 267 F.2d 784 (2nd Cir. 1959); Struthers Scientific & International Corp. v. General Foods Corp., 290 F.Supp. 122 (S.D. Tex.1968).

As was explicited above, both the parties and the issues in the New York action differ from those in the instant action. In the New York action USI seeks recovery against Fred Tasner, Robert Tasner and Alvin Tasner; in the instant action Fred Tasner and Harry Fox seek recovery for themselves and for USI against Billera and USI. The principal issues in the New York action are whether the Tasners fraudulently induced USI to issue its stock for the purchase of PCI in 1969; the principal issue in the instant action is whether in late 1973 and 1974 Billera engaged in a conspiracy to perpetuate himself in office by interfering with the stockholder

rights and interests of the plaintiffs and others, and as part of this conspiracy he terminated plaintiff's employment.

It is clear that equity and justice does not mandate that the instant action be enjoined.

Accordingly, it is hereby ordered that the plaintiffs' motion for an injunction staying the New York action is denied.