**EMERSON POWER TRANSMISSION
CORPORATION, Plaintiff,**

v.

**ROLLER BEARING COMPANY OF
AMERICA, INC. Defendant.**

No. 3:96cv45 AS.

United States District Court,
N.D. Indiana,
South Bend Division.

March 18, 1996.

Philip A. Whistler, Ice Miller Donadio and Ryan, Indianapolis, IN, for plaintiff.

James M. Matthews, Baker and Daniels, South Bend, IN, for defendant.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

The parties in the above-captioned cause have filed a variety of motions which are now before the court; however, only two of the pending motions are necessary to the court's disposition of this matter—the plaintiff's motion to remand for lack of subject matter jurisdiction and the defendant's motion to transfer.

The plaintiff, Emerson Power Transmission Corporation ("Emerson"), contends that the defendant, Roller Bearing Company of America, Inc. ("RBC"), improperly removed this action from the Porter County Superior Court by characterizing Count Three of Emerson's First Amended and Supplemental Complaint ("Amended Complaint") as a federal question claim under the Lanham Trade–Mark Act, 15 U.S.C. § 1125(a). RBC, in response, argues that Emerson is attempting to avoid federal court adjudication of what is essentially a federal claim by characterizing its trademark claim as a state law issue. The defendant also contends that, for reasons of judicial economy, this action should be transferred to the federal district court at New Haven, Connecticut, for consolidation with a similar action now pending in that court between these parties. For the reasons set forth below, this action is remanded to the Porter Superior Court.

## DISCUSSION

### I.   Procedural History

This court dismissed Emerson's original lawsuit against RBC on September 6, 1995, finding that, because complete diversity between the parties did not exist, the court lacked jurisdiction to hear the cause. Emerson refiled its suit against RBC approximately two weeks later in the Porter County (Indiana) Superior Court, and on October 5, 1995, the state court issued a preliminary injunction in Emerson's favor.

Thereafter, RBC commenced two separate lawsuits against Emerson in the state of Connecticut—one in state court and the other in the United States District Court for the District of Connecticut. In the federal district court suit, RBC raised claims of trademark infringement and product disparagement under the Lanham Trade–Mark Act, 15 U.S.C. § 1125(a)—claims it had failed to raise as counterclaims in the Porter County action. In its order of January 4, 1996, the Connecticut district court stayed proceedings pending a court-ordered settlement conference before a United States Magistrate Judge on January 31, 1996. After the parties failed to resolve their dispute in the settlement conference, the Honorable Ellen Bree Burns, Senior Judge, denied Emerson's motion to dismiss or stay the proceedings on February 12, 1996, indicating that the Connecticut district court intends to exercise jurisdiction over RBC's federal claim. That court subsequently denied RBC's motion for a preliminary injunction on February 20, 1996.

Meanwhile, during the court-ordered stay in the Connecticut action, Emerson filed its Amended Complaint in the Porter County Superior Court on January 8, 1996. Pursuant to the provisions of 28 U.S.C. § 1441, RBC removed the state court action to this court on January 18, 1996, alleging that Count Three of Emerson's Amended Complaint states a federal question claim. Emerson filed its motion to remand the cause for lack of subject matter jurisdiction on February 20, 1996, and RBC filed its response—together with its motion to transfer the cause for consolidation with the Connecticut federal court action—on February 28, 1996.

### II.   Factual Background

The present action, which had its genesis in a requirements-contract dispute involving the SPHERCO® product line of rod ends and spherical bearings, comprises various claims of trademark infringement, unfair competition, and product disparagement. A brief discussion of the factual background of the parties' relationship is helpful to an un-

derstanding of the motions now under consideration.

Prior to 1978, the Borg–Warner Corporation ("Borg–Warner") owned the SPHERCO trademark, the SPHERCO product line, and the part model designations associated with the SPHERCO product line. Pursuant to an agreement ("Assets Agreement") dated February 6, 1978, Borg–Warner sold the SPHERCO product line, including the SPHERCO trademark and all machinery, equipment, tools, fixtures, and other assets necessary for the manufacture of the SPHERCO line, to the Heim Universal Corporation ("Heim"). That same day, Borg–Warner and Heim entered into a separate manufacturing and marketing agreement ("Manufacturing Agreement"), whereby Heim agreed to supply Borg–Warner with its requirements for products manufactured under the SPHERCO trademark (and Borg–Warner agreed to purchase the same). The Manufacturing Agreement states that the signing of that agreement was a condition of Heim's purchase of the SPHERCO assets, and that the Manufacturing Agreement was to be an exhibit to the Assets Agreement. The parties to the present action are the successors-in-interest to Borg–Warner and Heim—at least with regard to the aforementioned Manufacturing Agreement.

Pursuant to the Manufacturing Agreement's provision that either party may terminate the agreement by giving one year's written notice of cancellation, Emerson notified RBC on February 2, 1995, that it planned to cancel that Agreement effective February 6, 1996. In September 1995, Emerson circulated a press release to purchasers of the SPHERCO line, announcing that, effective February 7, 1996, Emerson would begin selling SEALMASTER® rod ends and spherical plain bearings manufactured at its Valparaiso, Indiana plant. The press release claimed that the new SEALMASTER line would offer improved products and would utilize the same "nomenclature" as the SPHERCO product line previously sold by Emerson.

In its original Complaint in the Porter County action, Emerson alleged that RBC had breached the Manufacturing Agreement by placing an unauthorized surcharge on Emerson's orders and by shipping products only sporadically, in quantities well below Emerson's requirements. Emerson also contended that RBC, by refusing to supply its requirements, had intentionally attempted to exclude Emerson from the rod ends and spherical bearings market in an effort to sell SPHERCO products to Emerson's customers. The Porter County Superior Court granted Emerson's petition for a preliminary injunction, directing RBC to supply Emerson with its requirements pursuant to the terms of the Manufacturing Agreement through the Agreement's expiration on February 6, 1996.

Subsequently, in a letter dated November 7, 1995, Emerson notified RBC that it claimed ownership of the right to use the part model designations associated with the SPHERCO products, and that it would be unlawful for RBC to market products under the SPHERCO product name using the aforementioned part model designations. While Emerson agreed that the right to use the SPHERCO name reverted to RBC upon expiration of the Manufacturing Agreement, in Emerson's view, the part model designations did not revert to RBC. In its suit filed in the Connecticut district court on December 4, 1995, RBC sought a declaratory judgment that RBC is the sole owner of the part model designations and that, upon expiration of the Manufacturing Agreement, Emerson would have no right to use such part model designations. RBC also sought preliminary and permanent injunctive relief from Emerson's alleged infringement of the SPHERCO trademark and disparagement of RBC and its products, stating its claim under the Lanham Trade–Mark Act, 15 U.S.C. § 1125(a). Additionally, RBC requested punitive damages as provided for by Connecticut state law.

In its Amended Complaint in the Porter County action, Emerson sought preliminary and permanent injunctive relief from RBC's use of part model designations identical to, or confusingly similar to, the product designations used by Emerson during the existence of the Manufacturing Agreement. RBC removed the action to this court on January 18, 1996, alleging that Emerson's common law

trademark claims are in fact federal question claims under the Lanham Act.

### III. Analysis

In Count Three of its Amended Complaint, Emerson alleges that, upon termination of the Manufacturing Agreement, RBC intends to copy Emerson's distinctive product designations. Emerson claims that such copying would allow RBC to palm off its goods as those of Emerson and to otherwise unfairly compete with Emerson. In its brief in opposition to the plaintiff's motion to remand, RBC argues that Emerson is attempting to avoid federal court adjudication of what is essentially a federal claim by characterizing its trademark claim as a state law issue; Emerson, on the other hand, contends that Count Three of its Amended and Supplemental Complaint proceeds entirely under the common law of unfair competition.

■ Under 28 U.S.C. § 1441(a) and (b), a defendant may remove a civil case brought in state court to a federal court in that district and division if the action is based on a claim "arising under" federal law, or if none of the defendants are citizens of the state where the plaintiff brought the action. Thus, the general rule is that a defendant may remove a case to federal court only if the federal court would have had original jurisdiction over the action had the plaintiff initially filed it there. *Arkansas v. Kansas & Texas Coal Co.*, 183 U.S. 185, 188, 22 S.Ct. 47, 48, 46 L.Ed. 144 (1901); *Illinois v. Kerr–McGee Chem. Corp.*, 677 F.2d 571, 574 (7th Cir.), *cert. denied*, 459 U.S. 1049, 103 S.Ct. 469, 74 L.Ed.2d 618 (1982). Nevertheless, under the language of the removal statute, the federal court need not have had original jurisdiction from the moment the plaintiff first brought the lawsuit in state court: "If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant … of a copy of an amended pleading … from which it may first be ascertained that the case is one which … has become removable…." 28 U.S.C. § 1446(b) (1994).

■ Because this court previously dismissed the plaintiff's action against the defendant in federal court for lack of complete diversity between the parties, the court need only determine whether the present action, by virtue of the plaintiff's amended pleading, is founded on a claim that "arises under" federal law. *See Nuclear Eng'g Co. v. Scott*, 660 F.2d 241, 248–49 (7th Cir.1981), *cert. denied sub nom. Nuclear Eng'g Co., Inc. v. Fahner*, 455 U.S. 993, 102 S.Ct. 1622, 71 L.Ed.2d 855 (1982). It is a well-established principle that, in federal question cases, the basis for removal jurisdiction must appear on the face of the plaintiff's complaint. *Phillips Petroleum Co. v. Texaco, Inc.*, 415 U.S. 125, 127, 94 S.Ct. 1002, 1003, 39 L.Ed.2d 209 (1974); *Gully v. First Nat'l Bank*, 299 U.S. 109, 113, 57 S.Ct. 96, 98, 81 L.Ed. 70 (1936); *Burda v. M. Ecker Co.*, 954 F.2d 434, 438 (7th Cir.1992); *Kerr–McGee*, 677 F.2d at 575; *Nuclear Eng'g*, 660 F.2d at 249. Furthermore, in order to provide grounds for removal, the alleged federal question must be an essential element of the plaintiff's complaint. *Phillips Petroleum*, 415 U.S. at 127, 94 S.Ct. at 1003; *Gully*, 299 U.S. at 112, 57 S.Ct. at 97; *Kerr–McGee*, 677 F.2d at 575. However, the defendant's assertion of an issue of federal law in its answer or in the removal petition does not create a federal question basis for removal jurisdiction. *Gully*, 299 U.S. at 113, 57 S.Ct. at 98; *Kerr–McGee*, 677 F.2d at 575; *see also Phillips Petroleum*, 415 U.S. at 127–28, 94 S.Ct. at 1004; *Kansas & Texas Coal*, 183 U.S. at 188, 22 S.Ct. at 48.

■ It is also well-settled that a plaintiff has the prerogative of determining the theory of his own action—so long as the claim does not involve fraudulent concealment of a federal claim, the plaintiff may defeat removal to federal court by avoiding allegations that provide a basis for the defendant's assertion of federal question jurisdiction. *Jones*, 541 F.2d at 664; *see The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716 (1913). Thus, where the plaintiff has a choice of relying on applicable state law and so chooses, there can be no removal to federal court in the absence of diversity of citizenship. *See La Chemise Lacoste v. Alligator Co.*, 506 F.2d 339 (3d Cir.1974). Nevertheless, as indicated above, this principle is not without limitation. An exception to the "well-pleaded complaint

rule" is the "artful pleading doctrine," which holds that federal courts may, under certain circumstances, look beyond the face of the complaint to determine whether a plaintiff has artfully pleaded his cause of action so as to couch a federal claim in terms of state law. *Burda,* 954 F.2d at 438. In such cases, federal courts will conclude that the plaintiff's claim actually arose under federal law and is therefore subject to removal. *Id.; Kerr–McGee,* 677 F.2d at 575 ("The defendant is entitled to have the case removed to federal court, however, if the plaintiff is attempting to avoid having an essentially federal claim adjudicated in a federal forum merely by artfully drafting the complaint in terms of state law."); *Nuclear Eng'g,* 660 F.2d at 249; *Jones v. General Tire & Rubber Co.,* 541 F.2d 660, 664 (7th Cir.1976) ("Removal is proper where the real nature of the claim asserted in the complaint is federal, whether or not so characterized by the plaintiff.").

■ In deciding the plaintiff's motion to remand, one final principle to be considered is that the removal statute is to be construed narrowly and, therefore, against removal. *See Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108–09, 61 S.Ct. 868, 872, 85 L.Ed. 1214 (1941); *Kansas & Texas Coal,* 183 U.S. at 188, 22 S.Ct. at 49; *Kerr–McGee,* 677 F.2d at 576 ("The Supreme Court has been loathe to expand the federal courts' removal jurisdiction.... Indeed, almost all Supreme Court decisions expounding the law of removal have been in the context of holding that removal was unwarranted."). Accordingly, it is well-settled that the burden is on the party seeking to remove a case to establish his right to do so, and that the case should be remanded if there is any doubt as to the validity of that right. *Jones,* 541 F.2d at 664.

■ Because Count Three of the Amended Complaint makes no reference to the Lanham Act (or, for that matter, to any identified body of statutory or decisional law), the question is whether Emerson has attempted to state its unfair competition claim in such a way as to avoid adjudication in a federal forum of what is essentially a federal claim. The defendant first argues that this court should deny the motion to remand because, at all times prior to filing its motion to remand for lack of subject matter jurisdiction, Emerson had characterized its right to the part model designations as being grounded in federal law. Specifically, RBC contends that, in letters it received from Emerson in November and December 1995, Emerson asserted that its rights arose under federal law. RBC also argues that Emerson's counsel indicated in a telephonic conference with the Connecticut district court that the trademark claims in Count Three of its Amended Complaint were the same claims as those RBC alleged against Emerson in the Connecticut action. Further, RBC notes that after it removed the Porter County action to this court, Emerson immediately invoked this court's jurisdiction by filing a motion for preliminary injunctive relief, and that only after the Connecticut district court denied Emerson's motion to dismiss did Emerson move to remand the present action for lack of subject matter jurisdiction.

Upon examining the letters to which RBC refers, this court is unable to see where Emerson states that its unfair competition claim against RBC arises solely under federal law. In fact, in the letter to RBC's counsel dated November 7, 1995, Emerson's counsel specifically asserts that "[Emerson] believes that under the contract, as well as under applicable *state and federal* laws, [Emerson] continues to have the rights to these part numbers...." Defendant's Memorandum in Support of Motion to Transfer, Letter of November 7, 1995 (emphasis supplied). Thus, at the time Emerson first notified RBC of its intention to retain the part model numbers, Emerson left open the possibility of employing either state or federal law to protect its rights to those model designations. In a follow-up letter to RBC's attorney dated December 4, 1995, Emerson's counsel refers only to "the laws against deceptive trade practices and unfair competition." This letter does nothing to change the court's impression that, at the time of Emerson's initial communications with RBC regarding the ownership of the part model designations, Emerson had yet to decide un-

der which body of law it might file future trademark or unfair competition claims against RBC. With regard to the content of remarks allegedly made during a telephonic conference with the Connecticut district court, this court will not predicate federal question jurisdiction on one party's version of that conversation.

Although RBC places heavy reliance on the fact that Emerson's motion to remand came after Emerson had submitted to this court's jurisdiction by filing a motion for preliminary injunction (and only after the Connecticut district court had denied its motion to dismiss or stay the Connecticut proceedings), the timing of Emerson's motion to remand does not prove that, at the time of filing its Amended Complaint on January 8, 1996, Emerson was attempting to artfully plead its cause of action so as to couch a federal claim in terms of state law. A motion to remand for lack of subject matter jurisdiction may be made at any time prior to final judgment [1] and, rather showing that Emerson originally intended its unfair competition claim to be grounded in federal law, the timing of Emerson's motion to remand—after its motion for a preliminary injunction and for a hearing on that motion—may indicate nothing more than a tactical weighing of its options in the face of a multi-forum dispute.

RBC also argues that the competing claims of Emerson and RBC to the SPHER-CO part model designations cannot be determined except by reference to federal law. Specifically, RBC claims that "[i]f it is determined that the model designations are exclusively associated with [RBC's] federally protected trademark, then only federal law may resolve these claims." Defendant's Memorandum in Support of Motion to Transfer at 12. Although the likelihood of confusion among consumers is a crucial element in any

suit under the Lanham Act alleging trademark infringement or unfair competition, the mere fact that the plaintiff's complaint implicates an issue related to a federally protected trademark does not dictate that removal is proper. While it is undoubtedly true that the purpose of the Lanham Act is to ensure the integrity of registered trademarks, "[a]mple experience indicates that, where a state trademark or infringement action is sought to be removed to federal court on the theory that the action could have been predicated on the Lanham Act, federal courts have been unwilling to find a federal question by implication and have remanded to state courts." *La Chemise Lacoste v. Alligator Co, Inc.*, 506 F.2d 339, 346 n. 9 (3d Cir.1974).

Count Three of Emerson's Amended and Supplemental Complaint states that "[s]uch copying of EPT's distinctive product designations by RBC would cause serious confusion among customers and consumers, and would allow RBC to palm off its goods as those of EPT and to otherwise unfairly compete with EPT. The injury to the business and goodwill of EPT from such unfair competition would be substantial and irreparable." Amended Complaint ¶ 26. There is nothing in this language to suggest that Emerson intended to cloak an essentially federal claim in state law language. As one federal court has noted, "[T]he Lanham Act is derived generally and purposefully from the common law tort of unfair competition, and its language parallels the protections afforded by state common law and statutory torts." *American Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1433 (3d Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1838, 131 L.Ed.2d 757 (1995); *see also Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 157, 109 S.Ct. 971, 981, 103 L.Ed.2d 118 (1989) (the law of unfair competition, in contradistinction to patent law, "has its roots in the common-law tort of

---

1. *See* 28 U.S.C. § 1447(c) (1995). Although the plaintiff cites the thirty-day limitation in the first sentence of 28 U.S.C. § 1447(c) for the proposition that a party need not immediately object to removal in order to preserve its objection, the thirty-day limitation imposed by that statutory provision applies only to objections to defects in removal *procedure,* not to objections that the court lacks subject matter jurisdiction. *Williams*

*v. AC Spark Plugs Div. of General Motors Corp.*, 985 F.2d 783, 786 (5th Cir.1993); *State v. Ivory,* 906 F.2d 999, 1000 n. 1 (4th Cir.1990); *see Western Securities Co. v. Derwinski,* 937 F.2d 1276, 1279 (7th Cir.1991). "[T]he right to secure a remand in the absence of federal jurisdictional subject matter cannot be waived." *Jones v. General Tire & Rubber Co.,* 541 F.2d 660, 662 (7th Cir.1976).

deceit"). Unlike RBC's trademark claim in the Connecticut district court action, which asserts that Emerson has disparaged RBC and its products in violation of section 43(a) of the Lanham Act, the present action does not require an interpretation of the Lanham Act to resolve the claim. Rather, it appears that the issues of the ownership of the disputed part model designations and any unfair competition resulting from their misappropriation (by either party) may be determined solely by reference to the contractual agreements between the parties and the common law of unfair competition.

Even if the defendant's contention—that, because the part model designations are exclusively associated with a federally protected trademark, the parties' competing claims cannot be determined except by reference to federal law and, thus, removal is proper—amounts to an argument that federal law preempts the field of trademark regulation where federally protected trademarks are implicated, the defendant gets no further under that approach. First, the Lanham Act generally does not preempt state regulation of trademarks, whether statutory or at common law. *La Chemise Lacoste,* 506 F.2d at 346; *Gardner v. Clark Oil Refining Corp.,* 383 F.Supp. 151, 153 (E.D.Wis.1974). More important, in this circuit, the assertion of a defense of federal preemption does not create a federal question for purposes of the removal statute. *Kerr–McGee,* 677 F.2d at 578 ("We can see no reason for treating a defense of federal preemption differently than any other defense based on federal law, and a defense to a state law claim cannot be a ground for removal."). Thus, any claim that federal law preempts state regulation of trademarks must fail as a basis for removal.

Defendant RBC also contends that because the unfair competition claims asserted in Count Three of Emerson's Amended Complaint are compulsory counterclaims to RBC's federal court action in Connecticut, this court should exercise its "supplemental" jurisdiction pursuant to Rule 13(a), Fed. R.Civ.P., and 28 U.S.C. § 1367 "both to deny Emerson's motion to remand and to transfer this action to the Connecticut District Court pursuant to 28 U.S.C. § 1404(a)." Defendant's Memorandum in Support of Motion to Transfer at 7. Specifically, RBC argues that because the district court in Connecticut has already held that it has federal subject matter jurisdiction over RBC's claim, this court "may, therefore, lawfully exercise its supplemental jurisdiction over the claim pleaded in Count III of Emerson's Amended Complaint for purposes of transferring this action to the Connecticut District Court." *Id.* at 10. This is indeed a novel argument.

Section 1367 states in relevant part that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a) (1993).[2] Apparently, because the supplemental jurisdiction statute refers to the district courts in the plural rather than the singular form, the defendant reads the language of the statute to extend the concept of supplemental jurisdiction as between district courts sitting in separate circuits, so long as the claim in one district court relates to a case or controversy filed in another district court. This court does not read the concept of supplemental jurisdiction so broadly.

**2.** In *Brazinski v. Amoco Petroleum Additives Co.,* 6 F.3d 1176 (7th Cir.1993), the Seventh Circuit described the rationale behind the congressional codification of the caselaw doctrines of "pendent" and "ancillary" jurisdiction:

The statute extends the jurisdiction of the federal district court to all claims sufficiently related to the claim on which its original jurisdiction is based to be part of the same case or controversy within the meaning of Article III

of the Constitution. If a claim is close enough to the federal (or other) claim that confers federal jurisdiction to be part of the same case, there is no constitutional bar to the assumption of federal jurisdiction over the claim, because Article III confers federal jurisdiction over cases or controversies rather than over claims; and the new statute goes to the constitutional limit.

*Brazinski,* 6 F.3d at 1181.

Congress adopted 28 U.S.C. § 1367 in 1990 to codify under the name of supplemental jurisdiction the caselaw doctrines of "pendent" and "ancillary" jurisdiction. The doctrine of "pendent" jurisdiction permits a federal court to entertain a state claim of which it would otherwise lack subject matter jurisdiction when it is joined with a related federal claim (generally a federal question claim). "Ancillary" jurisdiction, on the other hand, supports jurisdiction of certain claims interposed by parties other than the plaintiff, including compulsory counterclaims if jurisdictional aid is needed. However, neither of these judicially created doctrines extend subject matter jurisdiction to one court simply because another court has federal subject matter jurisdiction over a related case or controversy. Nor does this court find any evidence that Congress, in codifying the two doctrines as "supplemental" jurisdiction under § 1367, intended to expand the doctrines of pendent jurisdiction and ancillary jurisdiction so as to confer federal question jurisdiction on one district court simply because another district court has indicated that it has subject matter jurisdiction over a related case or controversy. Indeed, the Supreme Court of the United States recently held that

> [a]ncillary jurisdiction may extend to claims having a factual and logical dependence on "the primary lawsuit," but that primary lawsuit must contain an independent basis for federal jurisdiction. The court must have jurisdiction over a case or controversy before it may assert jurisdiction over ancillary claims.

*Peacock v. Thomas,* —— U.S. ——, ——, 116 S.Ct. 862, 867, 133 L.Ed.2d 817 (1996) (citations omitted). Because the plaintiff's Amended Complaint in the present cause does not state a federal question, this court has no authority to exercise supplemental jurisdiction over Emerson's claims. Therefore, the court will not transfer this cause for consolidation with the Connecticut district court action.

As a final matter, this court is compelled to comment on the dilatory tactics of the defendant in this dispute. RBC characterizes Emerson's motion to remand as an attempt to circumvent the compulsory counterclaim rule and insists that the present action must be consolidated with the Connecticut federal court action in the interests of judicial economy. Presumably, RBC intends that this court overlook the defendant's own actions to-date. Assuming, without deciding, that RBC's Lanham Act claims constituted compulsory counterclaims in the Porter Superior Court action, RBC technically has not violated Fed.R.Civ.P. 13(a) by bringing its action in the Connecticut district court. Nothing in the language of Rule 13 precludes the filing a duplicative lawsuit in new jurisdiction instead of a compulsory counterclaim in the pending action, since the mandatory language of the Rule reflects a theory of res judicata applicable only upon termination of the original action. *See* 6 CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 1418 (2d ed. 1990). However, the filing of the second suit clearly contravenes the purpose of Rule 13(a), which "was designed to prevent the multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters." *Southern Constr. Co. v. Pickard,* 371 U.S. 57, 60, 83 S.Ct. 108, 110, 9 L.Ed.2d 31 (1962). As the Supreme Court noted in *Southern,* the Rule "was particularly directed against one who failed to assert a counterclaim in one action and then instituted a second action in which that counterclaim became the basis of the complaint." *Id.* Certainly, the present multi-forum dispute engineered by the defendant, while not in violation of Rule 13, reflects the scenario to which the Supreme Court alluded.

## CONCLUSION

In its Amended Complaint, the plaintiff has stated a claim of unfair competition without reference to the provisions of the federal Lanham Act. Because there is insufficient evidence that the plaintiff has artfully pleaded its claim so as to avoid adjudication in a federal forum of an essentially federal claim, and because there is no diversity between the parties, this court does not have subject matter jurisdiction over the cause. Accordingly, the plaintiff's Motion to Remand the case to the Porter County Superior Court is

**GRANTED,** and the defendant's motion to transfer the cause is **DENIED.** The plaintiff's motions for preliminary injunction, for a hearing, and for an enlargement of time to respond to the defendant's motion for change of venue, as well as the defendant's motions to enlarge the time in which to respond to the plaintiff's discovery requests, to stay the proceedings temporarily, and to enlarge the time in which to respond to the plaintiff's Amended Complaint, are **DENIED AS MOOT.**