JOHN ALDEN LIFE INSURANCE COMPANY, Plaintiff,

v.

C.A. CAVENDES, Sociedad Financiera, Defendant.

No. 82–1114–CIV–SMA.

United States District Court, S.D. Florida.

July 6, 1984.

Robert Sondak of Paul, Landy, Beiley, Harper & Metsch, Miami, Fla., Jay Strum, New York City, for plaintiff.

Eugene Stearns, Arky, Freed, Stearns, Watson & Greer, Miami, Fla., for defendant.

## MEMORANDUM OPINION GRANTING DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT

ARONOVITZ, District Judge.

### I. NATURE OF THE ACTION and JURISDICTION

This is an action for damages and for the imposition of a constructive trust by Plaintiff, JOHN ALDEN LIFE INSURANCE

COMPANY ("JALIC"), against Defendant, C.A. CAVENDES, SOCIEDAD FINANCI-ERA ("CAVENDES") under § 10(b) of the Securities Exchange Act of 1934, Rule 10b–5 promulgated thereunder, Chapter 517, Florida Statutes and principles of common law fraud. The Complaint alleges that JALIC was induced to sell 323,700 shares of the common stock of Florida National Banks of Florida, Inc. ("FNB") to CAVENDES at $23.00 per share by means of misrepresentations and omissions of material fact. In particular, the Complaint alleges that CAVENDES told JALIC that CAVENDES was trying to build up a block of FNB stock for its own account for the purpose of exercising control over FNB and that JALIC had no choice but to sell its FNB stock to CAVENDES because there were no other potential buyers for such stock at the then proposed price. JALIC alleges the statements were false because, at the time they were made, CAVENDES knew: (1) it had no intention of obtaining or exercising control over FNB, (2) the NCNB Corporation ("NCNB") had offered to buy the same shares from CAVENDES at $28 per share if CAVENDES could acquire them from JALIC, and (3) CAVENDES had already entered into an agreement to sell all FNB shares it owned or which it had a right to purchase. The Court has jurisdiction under 28 U.S.C. §§ 1331, 1332 and principles of pendent jurisdiction.

## II. PROCEDURAL BACKGROUND

CAVENDES has twice moved for summary judgment. In its first motion ("the procedural motion"—Doc. No. 75) CAVENDES contends that JALIC's claims are barred on two grounds: (1) by the provisions of Rule 13(a), Fed.R.Civ.P., because they constitute compulsory counterclaims to an earlier suit between the parties and (2) separately and independently, by the doctrine of *res judicata*. In its second motion ("the substantive motion"—Doc. No. 125) CAVENDES contends that even when all the facts alleged by JALIC are taken to be true, the Complaint fails to state a cause of action. The parties have thoroughly briefed each of the motions. The Court has also heard and considered extensive oral argument on both motions.

## III. FACTUAL BACKGROUND

Plaintiff JALIC is an insurance company organized under the laws of Minnesota, which has its principal place of business in Miami, Florida. Defendant CAVENDES is a Venezuelan corporation engaged in providing financial services.

On June 17, 1981 the parties began discussing the possibility that CAVENDES would purchase certain shares of FNB stock then owned by JALIC. Actual negotiations concerning the sale of the FNB stock commenced at approximately 7:00 p.m. on June 18, 1981 and continued through the evening into the early morning hours of June 19, 1981. On June 19, 1981 the parties entered into a written Stock Purchase Agreement and Addendum thereto ("the Agreement"), whereby JALIC agreed to sell, and CAVENDES agreed to purchase, 323,700 shares of FNB stock.

JALIC claims that shortly after the contract was executed it discovered that it had been defrauded. JALIC's fraud claims in this action are based on the fact that, while negotiating with JALIC, CAVENDES was also negotiating to sell its shares of FNB stock to NCNB Corp. at a higher price and that CAVENDES failed to disclose this fact to JALIC during their negotiations. CAVENDES never did sell the FNB stock to NCNB.

On May 7, 1982, almost eleven (11) months after the Agreement was executed, JALIC conveyed its stock to CAVENDES, pursuant to the Agreement. CAVENDES paid a purchase price of $7,817,955.93. Additionally, CAVENDES paid JALIC approximately $1.1 million in monthly interest payments between June 1981 and May 1982. At the closing, JALIC refused to return to CAVENDES a $2,002,893.70 letter of credit which had been posted as collateral to secure CAVENDES' performance under the Agreement. The letter of credit was posted to secure JALIC against,

*inter alia,* "a misrepresentation ... under that certain Agreement dated July 19, 1981, by and between [JALIC and CA-VENDES]." On May 27, 1982 CA-VENDES filed suit in this district seeking a declaration of its rights and duties under the Agreement and requesting an Order directing JALIC to return the letter of credit. The case fell before Judge Kehoe and was assigned Case No. 82–1088–Civ–JWK ("the first action").

JALIC filed this action six (6) days later on June 2, 1982. The gravamen of JALIC's complaint is that it was induced to enter into the Agreement by means of misrepresentations and omissions of material fact by Bruce Greer, Esq., a member of the Arky, Freed law firm, acting on behalf of CAVENDES. JALIC contends that the misrepresentations and omissions violated federal and state securities laws; constituted common law fraud; and entitle it to damages in excess of $1.6 million.

When JALIC filed this action it was aware of the nature of the first action and of the relationship between its claims and those of CAVENDES. JALIC revealed such knowledge by its statements on the "Civil Action Designation Form" filed with this case. In response to the Form's question as to whether there were pending related cases, JALIC identified the first action and described its relationship as "Same parties, somewhat similar case."

On June 30, 1982 JALIC served its answer in the first action and also asserted two counterclaims seeking declaratory relief. On September 30, 1982 Judge Kehoe conducted a non-jury trial in the first action. After receiving testimonial and documentary evidence, Judge Kehoe, on October 4, 1982, entered Findings of Fact and Conclusions of Law. See Appendix A. Since neither party filed a timely appeal Judge Kehoe's judgment is final.

## IV. THE PROCEDURAL MOTION

### COMPULSORY COUNTERCLAIM

Since the failure to assert a compulsory counterclaim precludes its later assertion in an independent action, Rule 13(a), Fed.R. Civ.P.; *see Baker v. Gold Seal Liquors, Inc.,* 417 U.S. 467, 469 n. 1, 94 S.Ct. 2504, 2506 n. 1, 41 L.Ed.2d 243 (1974), the first issue to be addressed is whether the claims brought by JALIC herein were compulsory counterclaims in the first action. With two exceptions not here involved, Rule 13(a) provides:

A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

To determine whether multiple claims arise from the same "transaction or occurrence" and are therefore compulsory under Rule 13(a) this Circuit has adopted the "logical relationship" test. *Revere Copper & Brass, Inc. v. Aetna Casualty & Surety Co.,* 426 F.2d 709, 715 (5th Cir. 1970). In *Revere Copper* the court stated:

[A] claim has a logical relationship to the original claim if it *arises* out of the same aggregate of operative facts as the original claim in two senses: (1) that the same aggregate of operative facts serves as the basis of both claims; or (2) that the aggregate core of facts upon which the original claim rests activates additional legal rights in a party defendant that would otherwise remain dormant. *Id.* (Emphasis in original).

It is important to note that the test does not contemplate that each claim involve proof of the same facts. Rather, both claims must arise out of the same aggregate of operative facts. In the seminal case on compulsory counterclaims, *Moore v. New York Cotton Exchange,* 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750 (1926), the Supreme Court defined the term "transaction" as used in the Rule:

"Transaction" is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relation-

ship... That they are not precisely identical, or that the counterclaim embraces additional allegations ... does not matter. To hold otherwise would be to rob this branch of the rule of all serviceable meaning, since the facts relied upon by the plaintiff rarely, if ever, are in all particulars the same as those constituting the defendant's counterclaim.

270 U.S. at 610, 46 S.Ct. at 371.

In *Plant v. Blazer Financial Services, Inc.,* 598 F.2d 1357 (5th Cir.1979), the plaintiff, Plant, executed a promissory note in favor of defendant, Blazer Financial Services, Inc. Thereafter, plaintiff brought a suit for damages alleging nondisclosure violations of the Truth in Lending Act. Blazer counterclaimed for the unpaid balance due on the promissory note executed by plaintiff. The issue addressed by the Fifth Circuit was whether the counterclaim was permissive or compulsory. Applying the logical relation test, the court held that an underlying debt in default was a compulsory counterclaim. The court concluded that the counterclaim was compulsory "because in a single aggregate of operative facts, the loan transaction gave rise to both plaintiff's and defendant's claim." 598 F.2d at 1361.

█ CAVENDES commenced the first action seeking declaratory relief concerning the rights and obligations of the parties under the Agreement. JALIC filed a two count counterclaim which also sought declaratory relief. The claims asserted in the first action, by both parties, required interpretation of the Agreement. To interpret the Agreement the court had to determine the intent of the parties. Indeed, the court in the first action, upon JALIC's request, granted JALIC leave to offer extrinsic evidence to support its interpretation of the Agreement. Clearly, such evidence would have encompassed the negotiations directly at issue in this, the second action. Both actions arise from the same "transaction or occurrence"—the sale of the FNB stock. The parties in both actions are the same— they are the buyer and the seller of the stock in that transaction.

Moreover, as requested by both parties the court in the first action adjudicated their rights and obligations under the Agreement. Now, after voluntarily foregoing the opportunity to resolve the fraud issues in the first action, JALIC claims in this action, before a different judge, that it was fraudulently induced to enter into that same Agreement. The objectives of Rule 13(a) are to provide complete relief to the parties in a single suit by "flushing out" all claims; to promote judicial economy; and to avoid the inefficiencies of piecemeal litigation. *See Southern Construction Co., Inc. v. Pickard,* 371 U.S. 57, 60, 83 S.Ct. 108, 110, 9 L.Ed.2d 31 (1962); 6 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1409. This action constitutes the type of claim splitting which contravenes the objectives of Rule 13(a).

Among the numerous cases cited by the parties, *Twin Disk, Inc. v. Lowell,* 69 F.R.D. 64 (E.D.Wisc.1975), is the closest factually. In *Twin Disk* the parties negotiated, and in 1968 consummated, certain agreements whereby: (1) Twin Disk acquired all the stock of Lem Instruments Corporation ("Lem"), (2) Lowell acquired stock in Twin Disk, (3) Lem agreed to hire Lowell for a seven-year period, and (4) Twin Disk guaranteed Lem's performance under the employment agreement. During the term of the employment contract Lem discharged Lowell. Three lawsuits followed, two of which are relevant to this action.

Lowell sued Twin Disk charging that Lem had breached the employment contract, and seeking damages from Twin Disk as guarantor of that contract. Subsequently, Twin Disk brought suit against Lowell, in another district, alleging, *inter alia,* that Lowell violated anti-fraud provisions of § 10(b) and Rule 10b–5 by virtue of his misrepresentations in connection with the sale of his Lem stock to Twin Disk. After judgment was entered in the first suit Lowell moved to dismiss the second suit on the basis of Rule 13(a). The court held that all of Twin Disk's claims in the second action should have been brought

in the first suit as compulsory counterclaims and therefore granted the motion to dismiss. Particularly important was the court's conclusion that the material misrepresentations alleged to have been perpetrated during the negotiations leading to the contracts that were entered into in 1968 were "the very negotiations that were at issue in the [first suit]." 69 F.R.D. at 68. See also *Merrill, Lynch, Pierce, Fenner & Smith v. Del Valle*, 528 F.Supp. 147, 151 (S.D.Fla.1981).

On the basis of the foregoing, JALIC's claims presented herein were compulsory counterclaims in the first action and are therefore barred by Rule 13(a) as interpreted in the above-cited cases.

RES JUDICATA

 Under the doctrine of *res judicata*, a final judgment on the merits bars future claims by the parties based on the same cause of action. *Brown v. Felsen*, 442 U.S. 127, 131, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1979). *Res judicata* precludes all claims which might have been made by the parties in the earlier case as well as those issues that were actually litigated. *Id.* For a prior judgment to bar a subsequent action, however, four requirements must be met:

1. two cases;

2. one of which has proceeded to final judgment by a court of competent jurisdiction;

3. that the parties, or those in privity with them, must be identical in both suits; and

4. that the same cause of action or claims be involved in both suits. *Ray v. Tennessee Valley Authority*, 677 F.2d 818, 821 (11th Cir.1982).

JALIC has not contested CAVENDES' assertion that the first three requirements have been established. Rather, JALIC contends that the prior action and the present action involve different causes of action. JALIC relies on the often used "primary right" test. Yet, as noted in *Stevenson v. International Paper Co.*, 516 F.2d 103, 109 (5th Cir.1975), there is "no one test for

deciding whether the substance of two actions are the same for purposes of *res judicata*." *Id. See also, Kilgoar v. Colbert County Bd. of Ed.*, 578 F.2d 1033, 1035 n. 1 (5th Cir.1978).

The modern test for determining whether causes of action are the same for purposes of *res judicata* is the "transactional" approach adopted by the Restatement (Second) Judgments 1981 §§ 24, 25:

§ 24. Dimensions of "Claim" for Purposes of Merger or Bar—General Rule Concerning "Splitting"

(1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar (see §§ 18, 19), the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

(2) What factual grouping constitutes a "transaction", and what groupings constitute a "series", are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

In addition to its approval by commentators, *see* 18 C. Wright and A. Miller, Federal Practice and Procedure: Jurisdiction §§ 4407–4408, the transactional approach has been adopted explicitly in *Carbonaro v. Johns-Manville Corp.*, 526 F.Supp. 260, 262–63 (E.D.Pa.1981) and *J. Aron & Co., Inc. v. Service Transportation Co.*, 515 F.Supp. 428, 445–48 (D.Md.1981) and implicitly in *Reed v. Marketing Services International, Ltd.*, 540 F.Supp. 893, 896–98 (S.D. Tex.1982). *Reed* is particularly compelling due to its analogous factual situation and because it was decided under largely identical precedent as must be followed in this case.

In *Reed*, plaintiffs sued defendants for, *inter alia*, fraud and misrepresentation

which allegedly caused plaintiffs to enter into a certain escrow agreement. The court held that a final judgment in an earlier suit between the same parties wherein plaintiffs sought return of the escrowed funds barred the pending action by operation of *res judicata. Id.* at 898. Although the court discussed the "primary right" test, a close reading of the decision reveals that the court actually applied the transactional test and gave effect to the policy goals of *res judicata:*

> Plaintiff's [first action] was based on the same transaction as is the subject of the instant law suit. *Id.* at 897.
>
> Plaintiff's have attempted to "split" their cause of action under the pretext of distinct legal rights and wrongs. In fact, however, the only difference between the instant action and the [first] action, is plaintiff's legal theory for relief. *Id.* at 898.

■ When correctly applied, the doctrine of *res judicata:* 1) minimizes the judicial energy devoted to individual cases; 2) establishes certainty and respect for court judgments, and 3) protects the party relying on the prior adjudication from vexatious litigation. *See generally* 1B Moore's Federal Practice ¶ 0.405[1]. These general policies are also promoted by the compulsory counterclaim provisions of Rule 13(a), Fed.R.Civ.P., discussed above.

■ Most importantly, the policies of *res judicata* are given effect by finding that the present action is barred. In the first action CAVENDES and JALIC sought to enforce their interpretations of the Agreement and JALIC also sought additional compensation under the term of the Agreement. To explain the parties intentions, JALIC successfully argued for the admissibility of the negotiations leading to the Agreement. In the present case, JALIC relies on the same negotiations to obtain an adjudication that it was fraudulently induced to enter into the Agreement. Such a tactic is precluded by the doctrine of *res*

*judicata.* CAVENDES is therefore entitled to summary judgment on both grounds asserted in its procedural motion.[1]

## V. THE SUBSTANTIVE MOTION

Summary judgment is appropriate if and only if there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Rule 56(c), Fed.R.Civ.P. Further, the facts must be viewed in the light most favorable to the party opposing the motion for summary judgment. *Westchester Corp. v. Peat, Marwick, Mitchell,* 626 F.2d 1212, 1213 (5th Cir.1980).

■ There are four elements of a Rule 10b–5 misrepresentation action:

1. a false representation of a material fact,

2. made with scienter,

3. upon which the plaintiff justifiably relied, and

4. that proximately caused the plaintiff's damages.

*Diamond v. Lamotte,* 709 F.2d 1419, 1422–23 (11th Cir.1983). The Florida based claims require proof of the first, third and fourth elements of the 10b–5 action as quoted above. *Silverberg v. Paine, Webber, Jackson & Curtis, Inc.,* 710 F.2d 678, 690–91 (11th Cir.1983). Since the parties are before the Court upon CAVENDES' motion for summary judgment, JALIC, to defeat the substantive motion, need not establish its *prima facie* case at this juncture. Rather, JALIC must, as to each element, show at least that a genuine issue of material fact remains in dispute for resolution at trial. CAVENDES contends that there are no genuine issues of material fact as to any of the four elements and that therefore it is entitled to judgment as a matter of law. Of course, JALIC's failure to show at least a genuine issue of material fact as to any one element would require the granting of CAVENDES' motion.

---

**1.** Nevertheless, this Court has considered and ruled upon the substantive motion separately from the procedural motion.

In its memorandum in opposition to the substantive motion, and at oral argument, JALIC has contended that it has shown at least a genuine issue of material fact as to all of the elements in its 10b–5 claim. Assuming, for purposes of this motion, that JALIC has met its present burden with respect to the first, second and fourth elements, CAVENDES will prevail if there is no genuine issue of material fact demonstrating that JALIC justifiably relied on Greer's alleged misrepresentations. JALIC has not contested CAVENDES' assertions that the Agreement was reached through arms-length negotiation and that no fiduciary relationship existed between the parties at the time the Agreement was negotiated. The fact that JALIC learned the full extent of the falsity of the alleged misrepresentations within a week of executing the Agreement is uncontested. Rather than disaffirming the contract upon the discovery of the alleged fraud, at a time when the Agreement was wholly executory, JALIC insisted upon performance by CAVENDES. Indeed, JALIC received and accepted over $1.1 million in interest payments during the ten months following its execution of the Agreement. Moreover, JALIC closed on the Agreement, earning a profit, approximately eleven months after learning of the alleged misrepresentations. To hold that JALIC sold its FNB shares to CAVENDES in reliance on Greer's alleged misrepresentations would defy common sense. One who sells securities after knowledge of a fraud "does not rely on and is not caused to sell by the fraud, and cannot recover under Rule 10b–5." *Safecard Services, Inc. v. Dow Jones & Co.*, 537 F.Supp. 1137, 1142 (E.D.Va.1982), *aff'd* 705 F.2d 445 (4th Cir.), *cert. denied*, —— U.S. ——, 104 S.Ct. 109, 78 L.Ed.2d 111 (1983).

Furthermore, JALIC's informed decision to close on the Agreement was essentially an election to receive the benefits of the Agreement and to forego an action for recission or damages based on fraud in the inducement. See *Dickson v. Gilbertson*, 720 F.2d 686 (1982), *aff'd, per curiam*, November 7, 1983. JALIC, like the plaintiff in *Dickson*, closed on a stock transaction with full knowledge of certain alleged misrepresentations and has made a profit on the sale of its stock. Said profit can not be allowed to become a windfall when the plaintiff closed on the Agreement long after it learned the facts constituting the alleged fraud. Even when the facts are viewed in the light most favorable to JALIC, JALIC simply cannot raise its contention of justifiable reliance to the level of a genuine issue of material fact.

On the basis of the foregoing, the entry of summary judgment on both of CAVENDES' motions is warranted. It is thereupon

ORDERED AND ADJUDGED as follows:

1. CAVENDES' Procedural Motion for Summary Judgment (Doc. No. 75) be, and the same is hereby, GRANTED, and separately and severally;

2. CAVENDES' Substantive Motion for Summary Judgment (Doc. No. 125) be, and the same is hereby, GRANTED;

3. Each party shall bear its own costs; and

4. A Final Judgment shall be entered herein reflecting the aforegoing.

APPENDIX A

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO. 82–1088–Civ–JWK

C.A. CAVENDES, SOCIEDAD

FINANCIERA, etc.,

Plaintiff,

v.

JOHN ALDEN LIFE INSURANCE

COMPANY, etc., Defendant.

FINDINGS OF FACT AND CONCLUSIONS OF LAW

KEHOE, District Judge.

This is an action for declaratory judgment brought pursuant to 28 U.S.C.

§§ 2201, 2202. The matter came before the Court on September 30, 1982 for a non-jury trial of plaintiff C.A. Cavendes, Sociedad Financiera's claim, and defendant John Alden Life Insurance Company's counterclaims, for declaratory relief. Having received documentary and testimonial evidence, having reviewed the parties' respective pretrial stipulations and having heard argument from counsel, the Court herein makes its findings of fact and conclusions of law as required by Rule 52(a), Fed.R.Civ.P.

## FINDINGS OF FACT

1. Plaintiff C.A. Cavendes, Sociedad Financiera ("Cavendes") is a Venezuelan corporation which has its principal place of business in Caracas, Venezuela.

2. Defendant John Alden Life Insurance Company ("JALIC") is an insurance company organized under the laws of Minnesota, which has its principal place of business in Miami, Florida.

3. Because there is complete diversity of citizenship between the parties and because the amount in controversy here, exclusive of interest and costs, exceeds $10,000, the Court concludes that it has jurisdiction to adjudicate this case under 28 U.S.C. § 1332. The Court further concludes that venue is proper in this district by virtue of 28 U.S.C. §§ 1391(a) and (c).

4. On June 19, 1981, plaintiff Cavendes and defendant JALIC entered into an arm's length stock purchase agreement and addendum thereto for the purchase by Cavendes of certain common stock owned by JALIC.

5. In order to secure performance, and as part of the agreement between the parties, on August 20, 1981, plaintiff/buyer Cavendes delivered an irrevocable letter of credit to defendant/seller JALIC in the amount of $2,002,893.70 which expires on October 31, 1982.

6. Pursuant to section 2 of the agreement, Cavendes made monthly payments from June 19, 1981, for the months of June, July, August, September, October, November, and December, 1981 and January, February, March and April, 1982. Defendant JALIC accepted each monthly payment.

7. Payment for the month of May until May 7, 1982 was offered by plaintiff Cavendes to defendant JALIC on a pro rata basis according to the formula set out in section 2 of the agreement.

8. Defendant JALIC refused to accept any payment for interest accrued prior to closing for the period of May 1, to May 7, 1982.

9. On May 7, 1982, plaintiff Cavendes made payment of $7,817,955.93 to defendant JALIC which was the full amount that JALIC demanded at closing and the shares of stock which were the subject of the agreement were transferred to JALIC to Cavendes.

10. Defendant JALIC has neither delivered the letter to plaintiff Cavendes nor has defendant drawn on the letter of credit.

11. There now exists a substantial actual controversy between the parties as to whether Cavendes has fully performed its obligations under the June 19, 1981 agreement and addendum thereto, and as to whether JALIC may properly draw on the letter of credit and, if so, to what extent. Under these circumstances, the Court concludes that the parties may properly seek a declaration of their respective rights and obligations here. *See* 28 U.S.C. § 2201; Rule 57, Fed.R.Civ.P.

## CONCLUSIONS OF LAW

12. Paragraph 3 of the addendum to the June 19, 1982 agreement provides as follows:

3. *Indemnity with Respect to the Equitable Consideration; Sage Gray Todd & Sims.* Buyer represents and warrants that at the present time it owns or has contracts or options to purchase an aggregate of 2438232 shares of the Common Stock of First National Bank of Florida ("Initial Shares"). If as a result of any purchases, distributions, acquisitions, pledges, or other transfers of any

shares of the Common Stock of First National Bank of Florida in addition to the Initial Shares, Seller shall in any way become obligated to pay any sums, or be named in a lawsuit alleging that any such sums are owed, among others, by Seller to Combanks Corporation and/or Home State Financial Services, Inc. ("Equitable Consideration Parties") as a result of that certain agreement dated as of March 28, 1981, between the Equitable Consideration Parties and Buyer, Seller, Arden Doss, Jr. and Guillermo Cary, then Buyer agrees to indemnity and to hold whole and harmless Seller for any such amounts and for any costs, expenses, and liabilities, including reasonable attorney fees, which Seller may incur in connection therewith or in defense thereof. Similarly, Buyer agrees to pay and to indemnify and to hold whole and harmless Seller for any legal fees and expenses which may be owed or claimed to be owed by Sage Gray Todd & Sims.

13. JALIC alleges in its counterclaim (¶ 18) that:

According to the terms of the Agreement (Addendum ¶ 3) plaintiff is required to indemnity and hold harmless defendant for any amounts, costs, expenses and liabilities which defendant may incur as a result of becoming obligated to pay sums or being named in a lawsuit alleging that any sums are owed pursuant to an agreement dated March 28, 1981 between Combanks Corporation and/or Home State Financial Services, Inc. and plaintiff, defendant, Arden Doss, Jr. and Guillermo Cary ("Combanks Agreement"), to pay equitable consideration with respect to any purchases, distribution, acquisitions, pledges, or other transfer of any shares of the common stock of Florida National Bank of Florida Inc. from March 29, 1981 up to and including March 31, 1982.

14. Cavendes contended at trial that the foregoing provision in plaintiff's Exhibit 3 is clear and unambiguous and that, pursuant to its terms, JALIC has no right to be indemnified by Cavendes as alleged since Cavendes did not at any time purchase shares in excess of the "Initial Shares." JALIC argued to the Court that the foregoing provision was ambiguous and required the introduction of parol evidence to aid the Court in construing its meaning.

15. Based upon a facial reading of paragraph 3, the Court finds that the provision admits of only one construction: JALIC may seek indemnification from Cavendes for sums owed under the March 28, 1981 Combanks/Home State Agreement *only* if Cavendes purchased or otherwise acquired shares "in addition to the Initial Shares." Since the uncontroverted evidence establishes that Cavendes did not do so, JALIC is precluded from seeking indemnification as it has alleged.

16. Sections 2 and 3 of the June 19, 1981 stock purchase agreement provide as follows:

2. *Adjusted Purchase Price.* In addition to the payments specified in Section 1, the Buyer shall also pay to Seller an amount computed at 15.25% per annum of the purchase price during the period from the date of this Agreement to the Closing Date. Such amount shall be paid by Buyer to Seller in monthly installments on the last day of each month thereafter through the month preceding the month in which the Closing Date occurs, with a final installment equal to 1.27% of said purchase price multiplied by a fraction of which the numerator shall be the day of the month is which said Closing Date occurs and the denominator of which shall be the total number of days in such month, such final installment to be paid on the Closing Date. Each such installment other than the final installment shall be paid to the account of such person and at such bank in Florida as Seller or his representative from time to time shall notify Buyer. Failure of Buyer to pay the full amount of any such monthly installment to Seller as herein provided within 30 days after notice by Seller to Buyer of such failure shall be deemed to be a material breach by Buyer of its purchase obligations

hereunder and (whether or not the regulatory approvals described in Section 4 hereof shall then have been obtained by Buyer) shall entitle Seller to terminate this Agreement and to recover from Buyer any amounts then owing to Seller under this Section 2 and Seller's damages, determined as provided in Section 3 as though Buyer had failed to purchase Seller's Shares on the Closing Date.

3. *Closing.* The closing of the purchase of Seller's Shares shall occur at One Biscayne Tower, Suite 2800, Miami, Florida at the end of the 15th month from the date of this Agreement ("Closing Date")[.] Buyer may choose to close earlier at any time after ten days notice to Seller after any necessary approvals, if any, from the Board of Governors of the Federal Reserve System, the Comptroller of the State of Florida, and any other regulatory approvals as may be required to permit Buyer to lawfully purchase Seller's Shares. Buyer shall use its best efforts promptly to apply for and obtain all required regulatory approvals and, except as hereinafter provided, will not take title in its name or exercise any rights of ownership unless or until all applicable regulatory requirements are satisfied. In the event that Buyer shall for any reason fail to purchase Seller's Shares on the applicable Closing Date as provided above, including, but not limited to, Buyer's failure or inability to obtain all required regulatory approvals within the applicable time period for the obtaining thereof, Buyer's failure or inability to take such action as may be required to permit Buyer lawfully to purchase Seller's Shares without necessity of obtaining such regulatory approvals, or the existence of an order of any court restraining or enjoining the Buyer's purchase of FNB Stock, Seller (irrespective of whether Seller's Shares shall then have been sold by it) shall be entitled to damages consequential to Buyer's to purchase the Seller's Shares as provided herein.

17. JALIC contends that it is entitled to payments for the months of May, June, July, August and September of 1982 pursuant to the foregoing provisions. JALIC argues that this is so because under Section 2 the payments are to be made until the "Closing Date." That term, JALIC maintains, is defined in the first sentence of section 3 as "the end of the 15th month from the date of this agreement ("Closing Date")." Cavendes contests this, arguing instead that when sections 2 and 3 of the agreement are read in their totality, it is indisputably clear that, upon ten day's notice, Cavendes may set an earlier "Closing Date" and that payments would accrue only until that date.

18. In support of its argument, JALIC asserted that the foregoing provisions as to the obligation of Cavendes to make monthly payments is ambiguous and unclear and that it should be permitted to adduce extrinsic evidence to prove the intent of the parties with respect to this question. Out of an abundance of caution the Court allowed JALIC to offer extrinsic evidence to assist the Court in interpreting this provision. JALIC, however, chose to offer no extrinsic evidence.

19. Having carefully reviewed the totality of sections 2 and 3 of the agreement, the Court finds that the "Closing Date" was not "the end of the 15th month." Rather, the "Closing Date" was, as common usage suggests and as the total import of the agreement indicates, the date on which the transaction actually closed— May 7, 1982. JALIC was thus entitled to payments only through and including May 7, 1982.

20. Defendant JALIC in its counterclaim sought a specific declaration that "plaintiff [Cavendes] has not completed performance of its obligations under the terms of the agreement." Similarly, in its unilateral pretrial stipulation, JALIC identified the issues it "believes to be ... properly raised in this case" to include "[w]hether Cavendes continues to have obligations pursuant to the agreement and addendum, performance of which is secured by the

letter of credit." Unilateral Pretrial Stipulation at 4–5.

21. Despite these assertions, JALIC failed to identify with particularity any outstanding obligations of Cavendes or to offer a scintella of evidence at trial demonstrating that Cavendes has failed to completely perform any obligations under the agreement and addendum thereto. The evidence adduced at trial and the facts stipulated to by the parties do show, however, that with respect to the nonperformance alleged by JALIC, Cavendes fully performed its obligations except for the pro rata payment from May 1 to May 7 which Cavendes offered at closing but which JALIC refused to accept.

22. JALIC at trial has claimed that, if it is not entitled to payments for the months of May, June, July, August and September pursuant to the June 19, 1981 agreement, it is, at the least, entitled to the pro rata payments from May 1 to May 7, 1982 in the amount of $22,975.13. Cavendes contends that since it was undisputed that Cavendes offered to pay this sum at closing and that since JALIC refused to accept it, JALIC has waived its claim for that sum.

22. JALIC did not waive its claim to the $22,975.13, because its refusal to accept that sum at closing was to avoid a waiver of any claim it might have had to the larger sum.

23. JALIC finally contends that, regardless of whether or not Cavendes' obligations are fully performed, it still has the right to retain the letter of credit until its expiration on October 31, 1982 because, JALIC contends, the letter of credit is "irrevocable."

24. The letter of credit is by its terms irrevocable, and under Florida Statute § 675.106(2), it may not be modified or revoked unless JALIC consents either to modification or revocation.

25. Since JALIC has not consented either to modification or revocation, Cavendes is not entitled to the return of the letter of credit.

26. Cavendes is not entitled to a judgment declaring the letter of credit null and void, as prayed for in the Complaint.

27. Any of the foregoing conclusions of law which may constitute findings of fact are hereby adopted as findings of fact.

DONE AND ORDERED in chambers at Miami, Florida, this 4th day of October, 1982.

## FINAL JUDGMENT

Pursuant to this Court's Findings of Fact and Conclusions of Law of October 1, 1982 made herein it is

ORDERED AND ADJUDGED that Plaintiffs prayer for entry of judgment declaring that (1) by accepting every monthly interest payment closing on the contract and selling the shares while it allegedly knew of "misstatements or omissions" immediately after execution of the contract, Defendant is estopped to make a claim and has waived any claim against Plaintiff, (2) by the terms of the contract, any further claims of interest against Plaintiff for the pro rata part of May are waived and (3) the letter of credit delivered by Plaintiff to Defendant is null and void is hereby DENIED.

It is further

ORDERED AND ADJUDGED that with respect to Defendant's counterclaims for declaratory judgment that:

(a.) Inasmuch as Plaintiff did not purchase more than the 2,438,232 shares of the subject stock, the "Initial Shares", Defendant is precluded from seeking indemnification from Plaintiff with respect to *"the Equitable Consideration, Sage Gray Todd & Sims"*, as set out in Paragraph 3 of the addendum to the June 19, 1982 agreement.

(b.) Plaintiff is obligated to pay Defendant the sum of $22,975.13 with interest thereon as provided by law from May 7, 1982.

(c.) Defendant is entitled to retain possession and benefit of the letter of credit in accordance with its terms and conditions.

It is further

ORDERED AND ADJUDGED that this Court shall retain jurisdiction for the purpose of considering motions as to attorneys fees and costs.

DONE AND ORDERED in chambers at Miami, Florida, this 4th day of October, 1982.