Michael JACKSON, et al., Plaintiffs,

v.

**CULINARY SCHOOL OF WASHINGTON, et al., Defendants.**

**Civ. A. No. 91–782 (CRR).**

United States District Court, District of Columbia.

Jan. 6, 1993.

---

Paul Fiscella of Northern Virginia Legal Services, Alexandria, VA, for plaintiffs.

Mark E. Shure of McDermott, Will & Emery, with whom Amy E. Hancock, Chicago, IL, was on the brief, for defendant Higher Educ. Assistance Foundation.

Mark B. Bierbower of Hunton & Williams, with whom Virginia W. Powell and Russell R. Johnson, III, Washington, DC, were on the brief, for defendant Crestar Bank.

Laurie J. Pangle of Fifth Third Bank of Toledo, N.A., Toledo, OH, for defendant Fifth Third Bank of Toledo, N.A.

Michael R. Hatcher of Israel & Raley, Chartered, Washington, DC, with whom David J. Hanson and Ann Ustad Smith of Michael, Best & Friedrich were on the brief; Richard D. George of Great Lakes Higher Educ. Ass'n, Madison, WI, was of counsel, for defendant Great Lakes Higher Educ. Ass'n.

W. Scott Davis of Bruckner, O'Gara, Keating, Sievers & Hendry, Lincoln, NE, with whom Saul L. Moskowitz of Clohan & Dean, Washington, DC, and Paul R. Dean of Reed, Smith, Shaw & McClay, McLean, VA, were on the brief, for defendant Nebraska Student Loan Program.

W. Scott Davis of Bruckner, O'Gara, Keating, Sievers & Hendry, Lincoln, NE, with whom Paul R. Dean of Reed, Smith, Shaw & McClay, McLean, VA, was on the brief, for defendant Texas Guaranteed Student Loan Program.

Leslie H. Wiesenfelder of Dow, Lohnes & Albertson, Washington, DC, for defendant Ohio Student Loan Com'n.

Fred E. Haynes, Asst. U.S. Atty., Dist. of Columbia, with whom were Jay B. Stephens, U.S. Atty., John D. Bates, Asst. U.S. Atty., on the brief; Fred Marinucci and Natalia Leons, of Office of General Counsel, Dept. of Educ., Washington, DC, were of counsel, for defendant Secretary of Educ.

Richard C. Kast, Asst. Atty. Gen., State of Va., with whom was Mary Sue Terry, Atty. Gen. of State of Va., Richmond, VA,

on the brief, for defendant Virginia State Educ. Assistance Authority.

## TABLE OF CONTENTS

I.   INTRODUCTION ..................................................... 717
II.  DISCUSSION ....................................................... 719
     A.  Because the Defendants have established the absence of any specific facts tending to show the existence of an agency relationship between the Department of Education and the Culinary School here involved, the Plaintiffs may not recover on the basis of such a relationship. ...................................................... 719
     B.  Because the Defendants have shown the absence of any evidence that the lenders delegated any substantial lender functions or responsibilities to the School, no special relationship can exist between the lenders and the School. Consequently, the Plaintiffs may not prevent the Secretary of Education from collecting on the student loans in this case on the basis of the nonexistent special relationship. ...... 720
     C.  Because the Plaintiffs concede that they have no evidence of preferential treatment rising to the level of a "Quid Pro Quo" between the School and the other Defendants, there can be no claim upon which relief can be granted under D.C.Code § 28–3809(a)(3) against the Secretary, guaranty agencies, or lenders. ............................ 722
     D.  The Omission of the FTC Holder Notice is not fatal to Defendant's position herein, and this ministerial technicality does not give rise to a claim upon which relief can be granted pursuant to D.C.Code § 28–3904. ......................................................... 723
         1.  Because the Defendants have established that the failure to include the FTC Holder Notice does not make the promissory contract unreasonably favorable to the Defendants, and the Plaintiffs have not set forth evidence that the contract was unreasonably favorable to the Defendants, the omission of the Notice is not an unconscionable trade practice under § 28–3904(r). ...................................................... 723
         2.  Plaintiffs' claim under § 28–3904(x) must fail because this section applies only to goods and not to services, which are here involved. ...................................................... 724
III. CONCLUSION ...................................................... 725

CHARLES R. RICHEY, District Judge.

## I.  INTRODUCTION

The Court has before it several Motions for Summary Judgment, the opposition thereto, the replies, and upon consideration thereof, the Court has decided for the reasons hereinafter set forth to grant the Defendants' Motions for Summary Judgment.[1]

The Plaintiffs have already obtained an entry of default against the Culinary School of Washington and from Barkev Kibarian, the Chairman of the School's Board of Directors. The Plaintiffs also reached a private accommodation with the Defendant Ohio Student Loan Commission, which was dismissed from the case on September 9, 1992. They now seek to obtain relief against the Secretary of Education, various state and private guaranty lending agencies, and two lenders, namely, Crestar Bank and the Fifth Third National Bank of Toledo, Ohio.

In March, 1992, this Court ruled on various Motions to Dismiss and concluded that

---

1. The Court is aware of the Defendant Crestar Bank's pending Motion to Dismiss. The result the Court reaches with respect to the Motions for Summary Judgment moots the Motion to Dismiss, and the Court need not consider the Motion.

there might be five possible grounds of recovery as to the above-named Defendants. *Jackson v. Culinary School of Washington*, 788 F.Supp. 1233 (D.D.C. 1992). These claims are now before the Court after the Court's Opinion, and after discovery and the filing of Local Rule 108(h) Statements of Material Facts not in Dispute.

The Court proceeds under the summary judgment standard set forth in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor," *id.* at 255, 106 S.Ct. at 2513, but "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48, 106 S.Ct. at 2509–10.

■ The burden rests with the moving party "to show initially the absence of a genuine issue concerning any material fact." *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970). The moving party may demonstrate the absence of any genuine issues of material fact in two ways. First, the moving party may, through affidavits, depositions, or other supporting evidence, negate an essential element of the non-movant's claim or claims. *Id.* at 159–60, 90 S.Ct. at 1609. Second, the moving party may, through similar documentation, point out to the court the absence of evidence to support an essential element of the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). In other words, "the moving party must explain its reasons for concluding that the record does not reveal any genuine issues of material fact...." *Bias v. Advantage Int'l, Inc.*, 905 F.2d 1558, 1560 (D.C.Cir.), *cert. denied*, 498 U.S. 958, 111 S.Ct. 387, 112 L.Ed.2d 397 (1990). When the moving party meets its burden through either one of the above methods, the non-moving party must then go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. at 2553. "When the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). In this case, the Defendants have established, through their submitted materials, that the Plaintiffs will not be able to meet their burden of proof at trial. The Plaintiffs, on the other hand, have not shown that there is a genuine issue of material fact for trial.

After careful review of the record the Court must conclude that the Plaintiffs may not recover against the Secretary or the Banks or the state or private guaranty agencies because these entities had no involvement in the allegedly fraudulent activities of the two Defendants against whom the Plaintiffs already have a default. Moreover, the terms of the loan documents do not violate local or federal law so as to give rise to a claim for which relief may be granted in the Federal Courts against the Defendants remaining in the case because the terms of the loans are not unconscionable nor do they constitute a deceptive trade practice insofar as the guaranty agencies, the two Banks, and the Secretary are concerned.

Merely because there may have been a higher than usual default rate on the student loans here involved, as the Plaintiff alleges, it cannot be disputed on this record that the current Defendants had no knowledge of the alleged fraudulent activities of the Culinary School in question or its Board. These current Defendants are so far detached from the cause of the Plaintiffs here that they cannot and should not be found liable for conduct they had nothing to do with in the first place. The Court takes some satisfaction in the fact that, in the future, schools such as the one here involved will not be eligible to participate in student loan programs if the schools maintain a high student loan default rate. 20 U.S.C. § 1085(a)(3) (Supp.1992).

■ In addition, the purpose of the student loan program in this country as presently operated is designed to provide students with a low-cost method of obtaining an education, but not a warranty or guarantee of the quality of the educational program. As a matter of policy, the Plaintiffs would require the current Defendants to police the curriculum and activities of all schools throughout the nation, and the practicalities of this would effectively bring about the end of the student loan program as we have known it in this country over the last several years. For these reasons, and the law applicable to the pending Motions, as hereinafter discussed, the Court will grant summary judgment to the Defendants.

Some of the Defendants, namely the Secretary of Education, Higher Education Assistance Foundation, Great Lakes Higher Education Corporation, Nebraska Student Loan Program, Inc., and Texas Guaranteed Student Loan Corporation, have filed counterclaims against some of the Plaintiffs to recover amounts allegedly due on the student loans. Currently, there is no dispositive motion before the Court with respect to those counterclaims. At this point, the Court is unable to determine the precise amounts of those counterclaims and the particular Plaintiffs against whom the counterclaims have been made. The papers submitted in the case thus far have not specified the amounts because the counterclaims have been a side issue in the case.

■ In the Court's discretion, the Court will dismiss the counterclaims without prejudice. The purpose of Rule 13 of the Federal Rules of Civil Procedure, which governs counterclaims, is to "prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes *arising out of common matters.*" *Southern Constr. Co. v. Pickard*, 371 U.S. 57, 60, 83 S.Ct. 108, 110, 9 L.Ed.2d 31 (1962) (emphasis added). All of the common matters of this suit have been resolved. The instant Opinion and accompanying Order have resolved the common issues of law in this case. At issue now are the actual amounts to which the Defendants are entitled to claim on the outstanding loans.

The Court sees no reason to require the Defendants to resolve each one of these different claims in the same litigation. It would be unwise and inefficient, as well as unfair to all the parties involved, to attempt to adjudicate such specific issues in a large, combined proceeding such as this one, with a large number of Plaintiffs and Defendants. These amounts may be litigated separately when and if the need for the same arises. Consequently, the Court will retain jurisdiction only for the purpose of entering a Default Judgment against the Defendant School and Barkev Kibarian.

## II. DISCUSSION

A. *Because the Defendants have established the absence of any specific facts tending to show the existence of an agency relationship between the Department of Education and the Culinary School here involved, the Plaintiffs may not recover on the basis of such a relationship.*

Plaintiffs claim that the alleged fraudulent misrepresentations of the School may be raised in defense to any loan collection action brought by the Secretary because the School was the agent of the Secretary, and its misrepresentations may be attributed to the Secretary. Upon review, the Court finds that the Plaintiffs have failed to come forward, in response to the various Motions for Summary Judgment, with evidence that the school served as the Secretary's agent in the administration of the loan program.

■ "An agent is one who is authorized by another (principal) to act on his behalf." *Johnson v. Bechtel Assoc. Professional Corp.*, 717 F.2d 574, 579 (D.C.Cir.1983), *rev'd sub nom on other grounds, Washington Metro. Area Transit Auth. v. Johnson*, 467 U.S. 925, 104 S.Ct. 2827, 81 L.Ed.2d 768 (1984). Two elements are required: first, "an indication by the principal that the agent will act on his behalf and subject to his control," and second, manifestation of consent by the agent. *Id.*

The materials submitted by the Defendants show that no such agency relationship existed between the Secretary and the School. The Plaintiffs have failed to set out specific facts tending to show that the Secretary ever authorized the school to act on the Secretary's behalf.

■ Mere participation in a government-sponsored program is not sufficient to transform the school into an agent of the Secretary. Nor can independent action of the school, such as allegedly encouraging the students to use particular lenders and to take out loans for the maximum possible amounts, be attributed to the Secretary. The fact that the students dealt with school officials during the loan process rather than with the Secretary does not, without more, indicate the existence of an agency relationship.

At issue is whether the Secretary had *responsibility* under the student loan program for a function that was performed by the school. *See Davey v. King*, 595 A.2d 999, 1002 (D.C.Ct.App.1991) (an agent takes action *on behalf of* its principal). The Plaintiffs have put forward no evidence of the school's performance of any duties which should have been performed by the Secretary. The agreement between the Secretary and the school does not indicate the delegation of any such duties. Indeed, the agreement specifically provides that it does not authorize the school to make loans under the guaranteed student loan program. Exhibit 2 to Plaintiffs' Memorandum of Points and Authorities in Opposition to the Secretary of Education's Motion for Partial Summary Judgment, at Article IV.

Plaintiff's reliance on *Heckler v. Community Health Services of Crawford County, Inc.*, 467 U.S. 51, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984), for the proposition that an agency relationship exists in the instant case, is unwarranted. This Court cited *Community Health Services* in its March 26, 1992, Opinion, for the proposition that an agency relationship *could* arise pursuant to a federal program. Serious differences exist, however, between *Community Health Services* and the instant case. In that case, a fiscal intermediary was performing administrative functions which were originally the responsibility of the Department of Health and Human Services. The fiscal intermediary was responsible for disbursements, accounting, auditing, and other duties *which the Department would otherwise perform. Id.* at 54, 104 S.Ct. at 2220. In the instant case, as the Court has already noted, the Plaintiffs have failed to identify any responsibility performed by the School which the Secretary would ordinarily perform. Consequently, the Plaintiffs have failed to put forward evidence tending to show the existence of an agency relationship between the Secretary and the School. The Secretary's Motion for Summary Judgment with respect to this claim must be granted.

B. *Because the Defendants have shown the absence of any evidence that the lenders delegated any substantial lender functions or responsibilities to the School, no special relationship can exist between the lenders and the School. Consequently, the Plaintiffs may not prevent the Secretary of Education from collecting on the student loans in this case on the basis of the nonexistent special relationship.*

The Plaintiffs claim that they can recover against the Secretary based on an alleged "origination" relationship between the school and the Defendant lenders. An origination relationship is "a special relationship between a school and a lender, in which the lender delegates to the school, or to an entity or individual affiliated with the school, substantial functions or responsibilities normally performed by lenders before making loans." 34 C.F.R. § 682.200.

■ In various letters and policy statements, the Secretary has promised to abstain, under certain circumstances, from collection of those defaulted student loans arising from an origination relationship. The policy statements are general, and were not made in the context of this case. *See, e.g.*, 34 C.F.R. § 682.512(e) (1992); Plaintiff's Original Complaint, Exhibit 2; Plaintiff's Amended Complaint, Exhibit 5

(all containing statements of the Secretary generally recognizing the policy of noncollection). The Court has previously ruled that, given the Secretary's intention to be bound by these statements, the Plaintiffs could attempt to show that an origination relationship did exist *in this case* between the school and one or both of the lenders. *If* an origination relationship existed, the Secretary could not collect on the student loans. *See Jackson v. Culinary School of Washington,* 788 F.Supp. 1233, 1241 (D.D.C.1992); *see also Public Citizen, Inc., v. United States Nuclear Regulatory Commission,* 940 F.2d 679, 681–82 (D.C.Cir.1991) (agency's intent to be bound determines whether an agency statement is a substantive rule). The Secretary's statements could not, however, bind third parties, such as the guaranty agencies or lenders. Consequently, the existence of an origination agreement could only affect the collection rights of the Secretary, not the rights of the other Defendants. *Jackson,* 788 F.Supp. at 1262.

■ The Defendants, in their Motions for Summary Judgment, point out that the lenders did not delegate any substantial functions or responsibilities to the School. Despite being given an opportunity to do so, the Plaintiffs have failed to come forward with any evidence that the lenders delegated any substantial functions or responsibilities to the School. Thus, no origination relationship can exist between the lenders and the School.[2] As a result, the Plaintiffs may not prevent the Secretary from collecting on any defaulted student loans on this basis.

Plaintiffs generally assert that the lenders delegated to the school "virtually all of the lender functions." However, after review of the specific delegations alleged by the Plaintiffs, the Court finds that most of the allegations are unsupported, and that those few delegations that might have occurred are so inconsequential and insubstantial as to fail, as a matter of law, to give rise to a origination relationship.

First, Plaintiffs assert that the lenders permitted the School to determine who would receive loans and in what amount. However, the Exhibits on which Plaintiffs rely clearly state that the lenders rely not on the School, but on the guaranty agencies to determine the amount of the loans. *See* Deposition of Faye Heffner, at 42–43; 45; 86; 108; Deposition of Calvin Gay, at 34–35.

■ Second, Plaintiffs assert that the School selected the lender for the Plaintiffs. Even assuming that the School did pressure students into selecting particular lenders, the Plaintiffs fail to explain how lender selection ordinarily falls on the lender. For a lender to select itself for students would require that the students had already selected the lender to select itself— a logical impossibility. There is no way that lenders ordinarily select themselves for students, and thus the lenders cannot have delegated a power that they did not possess in the first instance. Thus, the lenders cannot be held to a special relationship with the School on the basis of a unilateral activity, namely, alleged usurpation of the lender selection power, by the School.

Third, Plaintiffs assert that the School filled out portions of the promissory note reserved for the lender. Upon examination of copies of the depositions and the promissory notes, the Court finds that the Plaintiffs are referring to nothing more than printing the name and address of the lender. *See, e.g.,* Exhibit A to Defendant Crestar Bank's Memorandum of Points and Authorities in Support of its Motion for Summary Judgment. Exhibit A, which is the Affidavit of Calvin B. Gay, contains copies of the student loan applications filled out by the Plaintiffs. Some of the applications contain the pre-printed name and address of the lender. The record is unclear as to whether the School did in fact print this information. However, even assuming that the School did so, this scrivener's duty does not rise to the level of a substantial lender responsibility. Furthermore, the Plaintiffs have failed to put forward evi-

---

**2.** As a result, the Court need not address the Secretary's Motion for Reconsideration of that part of the Court's March 26, 1992, Opinion that limited the claims based on the origination relationship to those brought against the Secretary, and not any of the other current Defendants.

dence that this section is indeed normally completed by the lender, as opposed to the student or the guaranty agency.

■ Finally, Plaintiffs assert that the school verifies the identity of the borrower, another lender function. Plaintiffs claim that, although there is no evidence of an agreement between the school and the lenders to this effect, no agreement is necessary to create an origination relationship. However, verifying the borrower's identity does not create an origination relationship unless "[t]he lender *has* the school verify the identity of the borrower...." 34 C.F.R. § 682.200 (1992) (emphasis added). The language clearly envisions some type of affirmative action on the part of the lender, and the Plaintiffs have put forward no such evidence in this case.[3]

Because the Plaintiffs have failed to come forward with any evidence that the School performed any substantial lender functions, no evidence of an origination relationship between the School and the lenders exists. Consequently, the Secretary's Motion for Summary Judgment must be granted with respect to this claim.

C. *Because the Plaintiffs concede that they have no evidence of preferential treatment rising to the level of a "Quid Pro Quo" between the School and the other Defendants, there can be no claim upon which relief can be granted under D.C. Code § 28–3809(a)(3) against the Secretary, guaranty agencies, or lenders.*

■ The Plaintiffs claim that they can recover against all of the Defendants pursuant to D.C.Code Ann. § 28–3809(a)(3). § 28–3809(a)(3) provides that:

[a] lender who makes a direct installment loan for the purpose of enabling a consumer to purchase goods or services is subject to all claims and defenses of the consumer against the seller arising out of the purchase of the goods or service if such lender acts at the express request

of the seller, and ... the seller receives or will receive a fee, compensation, or other consideration from the lender for arranging the loan.

The Court explained in its Opinion of March 26, 1992, that the Plaintiffs, in order to recover under this statute, must show "that the lender intentionally provided this preferential treatment in return for the business provided by CSW [the School], i.e., Plaintiffs must prove that there was an explicit quid pro quo between the lender and CSW." *Jackson v. Culinary School of Washington*, 788 F.Supp. 1233, 1248 (D.D.C.1992).

■ The Plaintiffs concede that they cannot establish an explicit quid pro quo arrangement. *See* Plaintiffs' Memorandum in Opposition to the Defendant Higher Education Assistance Foundation's Motion for Summary Judgment, at 1. Instead, they claim that the lenders and guaranty agencies are guilty of "relaxed business judgment" in extending loans through a school with a high default rate.

This allegation falls short of the intentional preferential treatment that § 28–3809(a)(3) contemplates. Although Plaintiffs contend that a business arrangement exists, they have failed to come forward with any evidence of conduct by the lenders or guaranty agencies not in keeping with their obligations under the Guaranteed Student Loan Program. As the Defendants point out, during the time period during which these loans occurred, the school was an eligible, certified participant in the student loan program. Moreover, these Plaintiffs were themselves eligible borrowers. In the regulated context of student loans, the fact that the Defendants extended loans through a school with a high default rate, without more, does not support the contention that a special relationship existed between the School and the Defendants.

This conclusion is consistent with the plain meaning of the statute. § 28–3809

---

**3.** The Plaintiffs have also put forward several functions that they say are substantial lender functions—transmitting loan proceeds, initial loan counseling, having the borrower sign the promissory note, etc. As the Secretary's submissions indicate, the school is required by law to perform most of these tasks. The others are not required to be performed by the lender, and they certainly do not rise to the level of substantial lender functions. None of the functions indicates a special relationship between the lenders here involved and the School.

makes a purchase money lender liable for the wrongs of the seller, under certain circumstances, because of the close relationship of the seller and the lender. In this case, the Plaintiffs have not presented any evidence to connect the School and the other Defendants. Rather, the Plaintiffs speculate that, because they dealt only with the School, the School must have a special arrangement with the lenders and other Defendants. Nevertheless, a "[b]elief, no matter how sincere, is not equivalent to knowledge" for the purpose of surviving a motion for summary judgment. *Jameson v. Jameson,* 176 F.2d 58, 60 (D.C.Cir.1949). Because the Plaintiffs have presented no evidence of an explicit business relationship between the school and the other Defendants, the Plaintiffs' cause of action based on D.C.Code Ann. § 28–3809(a)(3) must fail, and Defendants' Motions for Summary Judgment with respect to this D.C.Code provision must be granted.

D. *The Omission of the FTC Holder Notice is not fatal to Defendant's position herein, and this ministerial technicality does not give rise to a claim upon which relief can be granted pursuant to D.C.Code § 28–3904.*

1. Because the Defendants have established that the failure to include the FTC Holder Notice does not make the promissory contract unreasonably favorable to the Defendants, and the Plaintiffs have not set forth evidence that the contract was unreasonably favorable to the Defendants, the omission of the Notice is not an unconscionable trade practice under § 28–3904(r).

■ The promissory notes which the students signed did not contain a federally required notice of claims and defenses, known as the FTC Holder Rule.[4] Plaintiffs contend that the failure to include the notice makes the loan contract unconscionable under § 28–3904(r)[5]. That provision makes unlawful any efforts to "make or enforce unconscionable terms or provisions of sales or leases." This Court has stated that the Defendants' failure to include the FTC Holder Notice might give rise to a claim, if and only if the omission rendered the loan agreement unconscionable. *Jackson v. Culinary School of Washington,* 788 F.Supp. 1233, 1253 (D.D.C.1992).

As the Court stated in its earlier opinion, the Plaintiffs must demonstrate the absence of meaningful choice, together with contract terms which are unreasonably favorable to the Defendants. *Id.; see Williams v. Walker–Thomas Furn. Co.,* 350 F.2d 445, 449 (D.C.Cir.1965). The Defendants have pointed out, in their Motions for Summary Judgment, that the absence of the notice does not render the agreement unconscionable. After a review of the record, the Court concludes that the agreement was not unconscionable because the Plaintiffs have failed to come forward with any evidence that the omission of the FTC Holder Notice rendered the promissory note unreasonably favorable to the Defendants.[6]

■ "In determining reasonableness or fairness, the primary concern must be with the terms of the contract considered in light of the circumstances existing when the contract was made." *Williams v. Walker–Thomas Furniture Co.,* 350 F.2d 445, 450 (D.C.Cir.1965); *accord Glopak*

---

**4.** The FTC Holder Rule declares it is "an unfair or deceptive act or practice ... for a seller, directly or indirectly" to accept payment or to receive a contract when the contract does not contain the following notice: "Any holder of this consumer-credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained pursuant hereto or with the procedures hereof. Recovery hereunder by the debtor shall not exceed amounts paid by the debtor hereunder." 16 C.F.R. § 433.2 (1976).

**5.** "It shall be a violation of this chapter, whether or not any consumer is in fact misled, deceived or damaged thereby, for any person to ... make or enforce unconscionable terms or provisions of sales or leases...." D.C.Code Ann. § 28–3904(r) (1989).

**6.** Because the Plaintiffs have failed to come forward with evidence that the promissory notes are unreasonably favorable toward the Defendants, the Court need not reach the issue of whether the Plaintiffs have shown an absence of meaningful choice.

*Corp. v. United States*, 851 F.2d 334, 338 (Fed.Cir.1988). So, the omission must be considered in light of the circumstances at the time the note was signed. Plaintiffs contend that the omission is either *per se* unconscionable or unconscionable under the circumstances because Plaintiffs had to "concede" an important consumer right due to their financial need.

▮▮▮▮ First, Plaintiffs' contention that the omission is *per se* unconscionable is incorrect as a matter of law. Transactions involving "standardized legal forms" are not necessarily unconscionable. *Connick v. Teachers Ins. and Annuity Ass'n of America*, 784 F.2d 1018, 1021 (9th Cir. 1986). Nor do contract clauses—or the absence thereof—that tend to limit the potential liability of one party render the agreement unconscionable. *See E.H. Ashley & Co., Inc. v. Wells Fargo Alarm Services*, 907 F.2d 1274, 1278 (1st Cir.1990).

Second, the omission is not unconscionable under the circumstances because the Plaintiffs made no actual "concessions" with respect to the FTC Holder Notice. The Plaintiffs stated that they had no knowledge of the FTC Holder Notice or that its omission might affect their rights under the contract. *See* Plaintiffs' Memorandum in Opposition to the Defendant Crestar Bank's Motion for Summary Judgment, at 9. Further, the Plaintiffs have put forth no evidence that the omission was intended by the lenders, guaranty agencies, or Secretary, to affect the Plaintiffs' rights. No evidence whatsoever has been put forward that the FTC Holder Notice was considered in any way during the drafting of the promissory note.

No evidence has been submitted that, at the times these promissory notes were signed, the parties were concerned about whether the students could raise defenses to loan repayment against the Defendants. Rather, the principal provisions of the note concerned the amount of the loan, the interest rate charged, the repayment terms, etc. The Plaintiffs have not objected to any of these substantive provisions. Because the principal terms of the promissory note are reasonable, and the Plaintiffs have failed to put forward any evidence that the omission of the FTC Holder Notice was ever considered by any party, let alone designed to take away a substantive defense of the Plaintiffs, the Plaintiffs have failed to meet their burden of showing that there is a genuine dispute as to whether the terms of the note unreasonably favored the Defendants. As a result, the Plaintiffs' claims under D.C.Code Ann. § 28–3904(r) must fail.[7]

2. Plaintiffs' claim under § 28–3904(x) must fail because this section applies only to goods and not to services, which are here involved.

▮▮▮ Plaintiffs assert a claim pursuant to D.C.Code Ann. § 28–3904(x). That provision makes it unlawful to "sell consumer goods in a condition or manner not consistent with that warranted ... by operation or requirement of federal law."[8] Plaintiffs assert that the FTC Holder Notice is a requirement of federal law, and the omission thereof constitutes a violation of § 28–3904(x). Upon review, this Court finds that § 28–3904(x) does not apply to the instant case because it only covers sales of goods, and not services.

The words of the statute support this conclusion. First, the provision specifically refers only to the sale of consumer *goods*, not services. Other provisions within § 28–3904 refer to both goods and services. *See, e.g.,* D.C.Code Ann. § 28–3904(a), (d),

---

7. In reaching this conclusion, the Court notes that § 28–3904(r) sets out a list of nonexhaustive factors which may tend to indicate whether an agreement is unconscionable. Most of the factors involve some knowledge on the part of the seller, *at the time of the transaction,* that the transaction's value to the buyer will in some way be inhibited. As mentioned above, there is no such evidence of knowledge on the part of the Defendants.

8. "It shall be a violation of this chapter, whether or not any consumer is in fact misled, deceived or damaged thereby, for any person to ... sell consumer goods in a condition or manner not consistent with that warranted ... by operation or requirement of federal law." D.C.Code Ann. § 28–3904(x) (1989).

(g), (*l* ), (s), (t) (each referring to "goods or services"). Second, § 28–3904(c), which prohibits representing used goods as new, refers only to "goods," and it clearly does not include services. Thus, a statutory scheme to distinguish between goods and services does exist.

Plaintiffs argue that Chapter 39 contains a definition of "goods and services" in § 28–3901(a)(7) and does away with the distinction between the two. This definition, however, includes both goods and services and merely points out that they can both be broadly construed. To suggest that the definition does away with the distinction between the two is unwarranted. Furthermore, Plaintiffs fail to explain why, if Chapter 39 does not distinguish between goods and services, its provisions refer in some places to both goods and services, and in some places only to goods.

Plaintiffs next assert that enrollment in the school was a consumer good contract because books and cooking utensils were included in the agreement. That conclusion is unjustified. When contracts involve the provision of both goods and services, courts look to whether the contract's predominant factor or purpose was to provide the good or the service. *See, e.g., Bonebrake v. Cox,* 499 F.2d 951, 960 (8th Cir. 1974); *Coakley and Williams, Inc. v.*

*Shatterproof Glass Corp.,* 778 F.2d 196, 197 (4th Cir.1985).

In this case, it is clear that the cooking classes were the predominant element of the enrollment agreement. The classes were not a service incidental to obtaining the books and utensils. Rather, the books and utensils were goods incidental to attending the cooking classes. Consequently, the enrollment agreement and the underlying loan contract must be construed as service contracts. Because § 28–3904(x) applies only to consumer goods and not services, Plaintiffs' claims based on § 28–3904(x) must be dismissed.[9]

### III. CONCLUSION

Upon consideration of the Defendants' respective Motions, the Plaintiffs' opposition thereto, the applicable law, and the record herein, the Court finds that the Defendants are entitled to summary judgment against the Plaintiffs' causes of action for the reasons contained herein.[10] The cross-claims of the Defendants are appropriately dismissed at this time as well. The Court will also dismiss, without prejudice, the counterclaims of the Defendants Secretary of Education, Higher Education Assistance Foundation, Great Lakes Higher Education Corporation, Nebraska Student Loan Pro-

---

**9.** The § 28–3809 and § 28–3904 claims against Defendants Nebraska Student Loan Program, Inc., and Texas Guaranteed Student Loan Corporation have been resolved in their favor by virtue of this Opinion. Consequently, their cross-claims against Defendant Secretary for indemnity are properly dismissed.

All of the claims against the Defendant Secretary have been resolved in the Secretary's favor by virtue of this Opinion. Consequently, the Secretary's cross-claims against the other Defendants for indemnity are properly dismissed.

**10.** The Secretary and the other Defendants have raised a number of other issues in their motions, including federal preemption, statute of limitations, choice of law clauses, etc. The Court's resolution of this matter does not require consideration of those issues, and the Court need not address them at this time.

The Court also notes that the Defendant, Fifth Third National Bank of Toledo, has not filed a Motion for Summary Judgment. Ordinarily, the Court would not grant Summary Judgment sua sponte. However, the claims against the

Fifth Third National Bank are identical to the claims against Crestar Bank and the guaranty agencies. Because of the numerous Motions for Summary Judgment filed by other Defendants in the case, the Plaintiffs were on notice that they had to come forward with evidence supporting their claims. The claims against the Fifth Third National Bank are identical to those against Crestar, the other bank, and the guaranty agencies. Thus, because the Plaintiffs were on notice and had an opportunity to present any and all evidence they possessed tending to support their claims, the Court may properly enter Summary Judgment sua sponte in favor of Fifth Third National Bank. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); *McBride v. Merrell Dow & Pharmaceuticals,* 800 F.2d 1208, 1212 (D.C.Cir. 1986); *Avianca, Inc. v. Corriea,* 705 F.Supp. 666, 684 n. 5 (D.D.C.1989) (recognizing that sua sponte grants of summary judgment are appropriate so long as the party against whom the summary judgment is granted has had notice and opportunity to put forward evidence in opposition thereof).

gram, Inc., and Texas Guaranteed Student Loan Corporation. As discussed in the Introduction, these amounts may be litigated separately when and if the need for the same arises. Also, because the Plaintiffs have been represented by a public interest organization, the Plaintiffs are individuals of limited financial means, a great disparity exists between the financial resources of the Plaintiffs and the Defendants, and the litigation raised legitimate issues of public concern in good faith, the Court, in its discretion, will not assess costs against the Plaintiffs in this case. *See, e.g., Wrighten v. Metropolitan Hospitals, Inc.,* 726 F.2d 1346 (9th Cir.1984); *Badillo v. Central Steel & Wire Co.,* 717 F.2d 1160, 1165 (7th Cir.1983). The Court will retain jurisdiction over the case only for the purpose of entering a Default Judgment against the Defendant School and Barkev Kibarian. The Court shall issue an Order of even date herewith consistent with the foregoing Opinion.

## JUDGMENT

Upon consideration of the Motions for Summary Judgment, and Motion for Reconsideration, the cross-claims, and the counterclaims filed by the Defendants, the Plaintiffs' opposition thereto, the applicable law, and for the reasons articulated in this Court's Opinion of even date herewith, it is, by this Court, this 6th day of January, 1993,

ORDERED that the Plaintiffs shall submit a Motion for Default Judgment as to the Defendants Culinary School of Washington and Barkev Kibarian on or before 4:00 p.m. on January 12, 1993; and it is

ORDERED that all Defendants shall have JUDGMENT pursuant to Rule 56 of the Federal Rules of Civil Procedure; and it is

FURTHER ORDERED that the Cross-Claims of Defendants Nebraska Student Loan Program, Texas Guaranteed Student Loan Corporation, and Secretary of Education shall be, and hereby are, DISMISSED; and it is

FURTHER ORDERED that the Counterclaims of the Defendants Secretary of Edu-

cation, Higher Education Assistance Foundation, Great Lakes Higher Education Corporation, Nebraska Student Loan Program, Inc., and Texas Guaranteed Student Loan Corporation against the Plaintiffs for the outstanding loan amounts shall be, and hereby are, DISMISSED WITHOUT PREJUDICE; and it is

FURTHER ORDERED that costs against the Plaintiffs shall not be assessed by the Court; and it is

FURTHER ORDERED that the above-captioned case shall be, and hereby is, DISMISSED from the dockets of the Court, and that this Court shall retain jurisdiction in the case only for the purpose of entering a Default Judgment pursuant to the Default entered by the Clerk against the Defendants Culinary School of Washington and Barkev Kibarian.